STATE OF NORTH CAROLINA v. SHARON ANNETTE HATFIELD ANDERSON

No. 202PA87

(Filed 6 April 1988)

1. Obscenity § 3— patent offensiveness—views of average adult in community—expert opinion testimony inadmissible

In this prosecution for disseminating obscenity, the trial court did not abuse its discretion in excluding opinion testimony by defendant's expert witness, based on a study he performed, that the average adult in the community would not find the four magazines in question to be patently offensive on the ground that the witness was no better qualified than the jury to address this question and could not assist the jury where the magazines defendant was accused of selling contained photographic depictions of actual acts of vaginal, anal or oral intercourse; the witness's study was designed to determine nothing more than the availability and accessibility of an extremely broad range of sexually suggestive materials which he described as "adult materials"; and the witness made no effort in his study to identify or isolate any factors bearing on the average adult's reaction to materials that were limited to pictorial portrayals of actual acts of vaginal, anal or oral intercourse.

2. Obscenity § 3— right to view materials containing nudity and sex—expert testimony—survey results inadmissible

In a prosecution for disseminating obscenity, the trial court did not err in refusing to permit defendant's expert sociologist to testify concerning the cumulative responses to questions in a survey he conducted of county resi-

dents pertaining to the views of those interviewed as to when, where and how adults should be able to obtain and view materials portraying nudity and sex, since the survey amounted to little more than a referendum on the desirability of the First Amendment and N.C.G.S. § 14-190.1, and the survey results would not assist the jury in resolving the issue before it as to whether the magazines in question appealed to a prurient interest in sex in a patently offensive manner. N.C.G.S. § 8C-1, Rule 702.

**3. Criminal Law § 102.6— jury argument—proper statement of contentions and inferences**

The prosecutor's jury argument in an obscenity case that if the items in question "are not obscene, I don't know what it would take to be" did not amount to an expression of personal belief in violation of N.C.G.S. § 15A-1230 (a) but came within the latitude that may be allowed counsel in stating contentions and drawing inferences from the evidence.

**4. Criminal Law § 102.6— jury argument—proper statement of contentions and inferences**

A prosecutor's jury argument in an obscenity case stating that an exhibit contained picture after picture of anal intercourse and asking what is more unhealthy than anal intercourse and how it can be anything but obscene was within the latitude allowed counsel in stating contentions and arguing reasonable inferences to be drawn from the evidence.

**5. Criminal Law § 170.3— jury argument—misstatements of law—error cured by instructions**

The trial court's proper instructions on the applicable law in an obscenity case cured any prejudice to defendant which may have resulted from possible misstatements of law in the prosecutors' jury arguments.

**6. Criminal Law § 102.7— jury argument not improper attack on credibility of witness**

The prosecutor's jury argument in an obscenity case that, based on the testimony of a State's witness, the jury should disbelieve the testimony of defendant's expert witness was a proper contention based on the evidence and not an improper attack on the credibility of the expert witness.

**7. Criminal Law § 170.3— jury arguments—personal opinions—errors cured by instructions**

The trial court's prompt curative instructions were sufficient to remove any possible prejudice that may have resulted when the prosecutors in an obscenity case went outside the record to express personal opinions at several points during their arguments to the jury.

**8. Obscenity § 1— dissemination of obscenity—constitutionality of statute**

The statute prohibiting the dissemination of obscenity, N.C.G.S. § 14-190.1, is not facially unconstitutional under the N.C. Constitution on the ground that its incorporation of the *Miller* test for obscenity adopted by the U.S. Supreme Court is unfair in a criminal context. Nor is the statute facially invalid under Art. I, §§ 14 and 19 of the N.C. Constitution because it fails to specify the geographic area intended by the term "community standards."

**9. Obscenity § 3— disseminating obscenity—intent—knowledge of contents of materials**

      The jury in a prosecution for disseminating obscenity was required to find that defendant possessed the requisite intent and guilty knowledge to support a conviction where the trial court specifically instructed the jury that to satisfy the intent requirement of the statute, the State must prove that defendant knew the content, character and nature of the magazines in question when she sold them.

**10. Obscenity § 3— value of materials—reasonable person standard**

      Unlike appeal to the prurient interest and patent offensiveness, the literary, artistic, political or scientific value of material alleged to be obscene may not be judged by contemporary community standards but is to be determined on the basis of whether a "reasonable person" would find such value in the material.

**11. Obscenity § 3— value of magazines—failure to instruct on reasonable person standard**

      Failure of the trial court to instruct the jury in an obscenity case that it must apply a reasonable person standard in determining the value of the magazines in question did not amount to prejudicial error where the court did not erroneously instruct the jury that they should apply contemporary community standards in determining value.

ON discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 85 N.C. App. 104, 354 S.E. 2d 264 (1987), awarding the defendant a new trial upon her appeal from judgments entered 28 March 1986 by *Lewis (Robert D.), J.,* in Superior Court, CATAWBA County. Heard in the Supreme Court on 10 November 1987.

*Lacy H. Thornburg, Attorney General, by Thomas J. Ziko, Assistant Attorney General, for the State-appellant.*

*James, McElroy & Diehl, P.A., by Edward T. Hinson, Jr.; Lipsitz, Green, Fahringer, Roll, Schuller & James, by Paul J. Cambria, Jr., pro hac vice; and, Herbert L. Greenman, pro hac vice, for the defendant-appellee.*

*North Carolina Civil Liberties Union Legal Foundation, by Michael K. Curtis, amicus curiae.*

MITCHELL, Justice.

      The defendant Sharon Annette Hatfield Anderson was tried upon proper indictments charging her with four offenses of feloniously disseminating obscenity in violation of N.C.G.S.

§ 14-190.1(a)(1). The jury returned verdicts finding the defendant guilty of two of the offenses charged and not guilty of the two remaining offenses. The defendant appealed to the Court of Appeals, which entered a decision on 7 April 1987 ordering a new trial on the ground that the trial court had committed reversible error by excluding certain expert testimony. On 7 July 1987, this Court allowed the State's petition for discretionary review.

The evidence for the State tended to show that on 7 October 1985, Steven Muhler, an investigator with the Hickory Police Department, entered the Imperial Popular Newsstand and Adult Bookstore. On that occasion, the defendant, Sharon Annette Hatfield Anderson, sold Muhler two magazines entitled *Jets of Jizz* and *Ass Masters Special #3*. On 8 October 1985, Muhler again entered the store, and the defendant sold him two magazines entitled *Super Sex Stars #1* and *Ass Masters Special #4*. The defendant was arrested on 9 October 1985 and charged with four counts of felonious dissemination of obscenity in violation of N.C.G.S. § 14-190.1(a)(1).

At the conclusion of the State's case-in-chief, the defendant offered the testimony of Dr. Joseph Scott, a sociologist. Dr. Scott testified that he had been employed by the defendant to conduct a study to determine "the tolerance level in this community for adult material." He testified that he attempted to determine whether the magazines in question exceeded the level of community tolerance by examining the availability and accessibility in Catawba County of "adult material." Thereafter, the trial court excluded Dr. Scott's opinion as to whether the magazines in question "exceeded the community level of tolerance." The trial court also refused to allow him to give his opinion as to whether the materials in question "depicted or described sex in a patently offensive way, in a way not tolerated by the average adult in this community."

The defendant also offered the opinion testimony of another sociologist, Dr. Charles Winick, who had conducted a poll or survey among certain residents of Catawba County. The first question in the survey asked whether, in the opinion of those interviewed, changing standards in recent years had made the depiction of nudity and sex in materials available only to adults more or less acceptable. The next four questions were directed to

whether those interviewed felt that consenting adults should have the right to obtain and view materials that depict nudity and sex. The final question asked whether those interviewed understood that the references to "nudity and sex" in the previous questions meant "exposure of the genitals and every kind of sexual activity, no matter how graphically depicted."

The trial court allowed the defendant to introduce the cumulative responses of those interviewed concerning changing standards and the definition of "nudity and sex" as used in the survey. Also, Dr. Winick was allowed to give his opinion based on the survey conducted that there was a very high degree of acceptance and toleration of sexually explicit material in Catawba County. The trial court did not allow the defendant to introduce the cumulative responses indicating the opinions of those interviewed with regard to whether consenting adults should have the right to obtain and view materials depicting nudity and sex, as the trial court concluded that those questions and answers were not relevant to any issue to be resolved at trial.

Thereafter, the defendant introduced the testimony of Dr. John T. Wheeler, another sociologist with training in the areas of family and sex therapy. Dr. Wheeler gave his opinion that the average adult applying contemporary community standards would not be stimulated in a prurient fashion by the materials at issue in the present case.

The defendant took the stand and testified on her own behalf that she was not aware of the contents of the magazines she sold Muhler and did not recall the sales for which she was charged. On cross-examination, the defendant acknowledged that she knew that the Imperial Popular Newsstand and Adult Book Store was an adult book store, and that she had sold magazines similar to those in evidence in this case on a daily basis while employed there. She testified that she was aware of a change in the obscenity law of North Carolina which had taken effect on 1 October 1985. She also testified that, from her conversations with a police officer named Tony Keller, she had a feeling that something was "going down." She felt this to be the case because Keller had been spending a lot of time in the store and had kept telling her that she needed to get out of the store before she was arrested.

The jury returned a verdict acquitting the defendant of disseminating obscenity by the sale of the magazines *Jets of Jizz* and *Super Sex Stars #1*. The jury found the defendant guilty of disseminating obscenity by the sale of *Ass Masters Special #3* and *Ass Masters Special #4*. The trial court entered judgments sentencing the defendant to imprisonment for three years for each count, but suspended the sentences and placed the defendant on supervised probation for a period of five years. As a special condition of probation, the defendant was ordered to serve an active term of imprisonment of six months. The defendant was fined $5,000.00 for each count, as a condition of probation.

The Court of Appeals concluded that the trial court's exclusion of portions of the testimony of Dr. Winick was proper. The Court of Appeals also concluded, however, that the trial court had committed prejudicial error by the exclusion of certain proffered testimony of Dr. Scott and held that the defendant must be awarded a new trial. We reverse the holding of the Court of Appeals and remand this case for reinstatement of the judgments of the trial court.

I.

[1] The State as appellant on discretionary review assigns error to the holding of the Court of Appeals that the trial court committed reversible error by excluding certain testimony of Dr. Scott. The State argues in support of this assignment that the trial court acted within its discretion in excluding his testimony. We agree.

Certain principles governing the admission of expert testimony in obscenity cases are well established. The prosecution is not constitutionally required to introduce expert testimony tending to show that materials alleged to be obscene are in fact obscene, once the materials have been placed in evidence. *Paris Adult Theater I v. Stanton*, 413 U.S. 49, 37 L.Ed. 2d 446 (1973). The materials themselves are the best evidence of what they represent. *Id.* Ordinary rules governing admission of expert testimony do not fit neatly into the trial of obscenity cases, because expert testimony usually is admitted to explain to juries what they otherwise would not understand. *Id.* "No such assistance is needed by jurors in obscenity cases." *Id.* at 56, 37 L.Ed. 2d at 456. The Supreme Court of the United States has held, however, that

the defendant may introduce appropriate expert testimony during obscenity trials. *Kaplan v. California,* 413 U.S. 115, 121, 37 L.Ed. 2d 492, 498 (1973). Nevertheless, in obscenity trials the trial court retains "wide discretion in its determination to admit and exclude evidence, and this is particularly true in the case of expert testimony." *Hamling v. United States,* 418 U.S. 87, 108, 41 L.Ed. 2d 590, 615 (1974).

The admissibility of expert testimony in North Carolina is now governed by Rule 702 of our Rules of Evidence. N.C.G.S. § 8C-1, Rule 702 (1986). We have construed that rule to mean that: "Expert testimony is properly admissible when it can assist the jury in drawing certain inferences from facts and the expert is better qualified than the jury to draw such inferences." *State v. Evangelista,* 319 N.C. 152, 163, 353 S.E. 2d 375, 383 (1987). In applying the rule, the trial court is afforded wide discretion and will be reversed only for an abuse of that discretion. *See id.* at 164, 353 S.E. 2d at 384; *State v. Knox,* 78 N.C. App. 493, 337 S.E. 2d 154 (1985). Further, under Rule 403 even relevant evidence may properly be excluded by the trial court if its probative value is outweighed by the danger that it would confuse the issues before the court or mislead the jury. *State v. Mason,* 315 N.C. 724, 731, 340 S.E. 2d 430, 434-35 (1986). Whether to exclude expert testimony for this reason also rests within the sound discretion of the trial court, which will be reversed only for an abuse of discretion. *Id.*

Applying the foregoing standards in reviewing the trial court's exclusion of certain of Dr. Scott's testimony as tendered by the defendant, we conclude that the trial court did not abuse its discretion. Instead, the trial court acted well within its discretion in excluding the proffered expert testimony, either on the ground that it would not assist the jury in understanding the evidence or determining a fact in issue or on the ground that the defendant had failed to establish a proper basis for Dr. Scott's opinion testimony as to any fact in issue.

In determining whether the material in question in an obscenity case is obscene, the factfinder is required to apply "contemporary community standards." *Miller v. California,* 413 U.S. 15, 37, 37 L.Ed. 2d 419, 438 (1973). In making its determination, the trier of fact must be guided by:

(a) whether "the average person, applying contemporary community standards" would find that the work, taken as a whole, appeals to the prurient interest . . . ; (b) whether the work depicts or describes, in a patently offensive way, sexual conduct specifically defined by the applicable state law; and (c) whether the work taken as a whole, lacks serious literary, artistic, political, or scientific value.

*Id.* at 24, 37 L.Ed. 2d at 431. Whether material appeals to the "prurient interest" and what is "patently offensive" are questions of fact. *Miller v. California*, 413 U.S. at 30, 37 L.Ed. 2d at 434. As required by the decision in *Miller*, N.C.G.S. § 14-190.1 specifically defines the acts of "sexual conduct" the portrayal of which may be found obscene if otherwise in violation of the statute. N.C.G.S. § 14-190.1(c) (1986).

Further, subsection (b) of the statute incorporates the three part test of *Miller* by providing that material will be found obscene only if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary community standards relating to the depiction or description of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, or scientific value; and

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

N.C.G.S. § 14-190.1(b) (1986). Although the statute specifically sets forth the "contemporary community standards" test only with reference to that part of the definition of obscenity relating to "prurient interests," the factfinder must be required under the statute to apply "contemporary community standards" in resolving questions concerning *both* the appeal of the material to the prurient interest *and* its patent offensiveness. *See Smith v. United States*, 431 U.S. 291, 300-301, 52 L.Ed. 2d 324, 334-35

(1977). The primary reason for applying "the standard of 'the average person, applying contemporary community standards' is to be certain that . . . [the material] will be judged by its impact on an average person . . . ." *Miller v. California,* 413 U.S. at 33, 37 L.Ed. 2d at 436.

In the present case, Dr. Scott testified that he had been employed by the defendant to "determine what the tolerance level was in the community for adult materials." Acting according to these instructions, he conducted a study of businesses in the Catawba County area that carried "adult materials." He testified that the materials he included in his study ranged from the "extremely mild to naked shots of women [sic] breasts and vulva area and penis and so forth up where you have pictures of couples together where they are engaging in oral, anal and vaginal sex." In describing how he attempted to determine whether the sexual conduct depicted in the magazines the defendant was charged with selling exceeded the level of community tolerance, he testified:

> Well, I looked at the amount of material that was available today and certainly available for a long time. Looked at the availability of volume of the material and then I looked at the accessibility. There is a step from available to accessibility. It is like drugs are available in a community but that does not mean they are accessible. They do not have that in a store labeled as such for purchase, it is hidden.

> That is why I was looking for the accessibility of the adult material, in other words how open and easy it was for a wide range of people to obtain and how it was tolerated. In doing so and trying to determine the level of tolerance, I went to adult book stores, the three of them for example, to look at what they were showing, what types of movies they were showing and magazines they had for sale. I went to the video shops, your neighborhood video outlet, to determine the type of x-rated films they had to rent and the number at the time.

Thereafter, Dr. Scott was questioned by defense counsel and the trial court as follows:

> Q. Now as a result of this study, were you able to render and are you able to render an opinion whether or not the materi-

al in this case, these four magazines depict and describe sexually patently offensive conduct specifically defined by the law of North Carolina?

A. Yes.

COURT: To the average person in the community.

Q. To the average adult person in the community.

A. Yes.

Q. What is your opinion?

A. My opinion is that it is tolerated by the average adult person in the community.

COURT: That is not the question, sir. The question is whether it is patently offensive to the average adult person in the community.

A. My answer would be that it is not patently offensive to the average person in the community.

The trial court sustained the State's objection to the proffered testimony of Dr. Scott that in his opinion the average person in the community would not find the four magazines in question to be patently offensive.

The State contends that the trial court properly excluded Dr. Scott's testimony on the ground that the defendant had failed to demonstrate that Dr. Scott had an adequate basis for forming an opinion on the issue of whether the average adult applying contemporary community standards would find the magazines in question patently offensive. On appeal, we must consider whether the proffered testimony would have assisted the jury in drawing inferences concerning that issue from facts, and whether Dr. Scott was better qualified than the jury to draw such inferences. More to the point, we must determine whether the trial court abused its discretion in determining that Dr. Scott could not assist the jury in this regard or was no better qualified than the jury drawn from Catawba County to determine whether the average adult applying contemporary community standards would find the materials in question patently offensive. *State v. Evangelista,* 319 N.C. at 163-64, 353 S.E. 2d at 383-84; *State v. Knox,* 78 N.C. App. 493, 337 S.E. 2d 154 (1985); N.C.G.S. § 8C-1, Rules 702 and 705 (1986).

In attempting to establish a basis for Dr. Scott's expert opinion, the defendant presented evidence that Dr. Scott had visited a variety of outlets where "adult material" could be found, including adult book stores, video shops, and convenience stores. The fact that Dr. Scott "found adult material" at several locations in Catawba County did not provide a sufficient basis to support the admission of his expert testimony concerning whether the average adult in the community would find the materials the defendant was accused of selling to be patently offensive.

The "sexual conduct" which if depicted will support a conviction under our obscenity statute is *specifically limited* by N.C.G.S. § 14-190.1(c)(2) to:

(1) Vaginal, anal, or oral intercourse, whether actual or simulated, normal or perverted; or

(2) Masturbation, excretory functions, or lewd exhibitions of uncovered genitals; or

(3) An act or condition that depicts torture, physical restraint by being fettered or bound, or flagellation of or by a nude person or a person clad in undergarments or in revealing or bizarre costume.

N.C.G.S. § 14-190.1(c) (1986). The magazines that the defendant was accused of selling contain photographic depictions of actual "acts of vaginal, anal or oral intercourse" on each and every page.

Dr. Scott's study does not appear in any way to have focused on whether the average adult applying contemporary community standards would find magazines limited exclusively to pictorial portrayals of actual acts of "vaginal, anal or oral intercourse" to be patently offensive. To the contrary, he indicated that the "adult magazines" he found at several locations in Catawba County covered a wide scope of materials ranging from the "extremely mild" to pictorial portrayals of mere nudity. Some unspecified number included some pictures of couples engaging in "oral, anal and vaginal sex." It is crystal clear from Dr. Scott's testimony that his study was designed to determine nothing more than the availability and accessibility of an extremely broad range of sexually suggestive material which he described as "adult material."

It is well established that:

[T]he availability of *similar* materials on the newsstands of the community does not automatically make them admissible as tending to prove the nonobscenity of the materials which the defendant is charged with circulating. . . . 'Mere availability of *similar* material by itself means nothing more than that other persons are engaged in similar activities.'

*Hamling v. United States*, 418 U.S. at 125-26, 41 L.Ed. 2d at 625-26 (emphasis added) (quoting *United States v. Manarite*, 448 F. 2d 583, 593 (2d Cir.), *cert. denied*, 404 U.S. 947, 30 L.Ed. 2d 264 (1971)).

In the present case Dr. Scott's study did not even focus on the availability of material *similar* to the magazines the defendant was accused of selling. At best, his study could be said to have focused on the availability of a very broad range of sexually oriented materials that were largely dissimilar to the magazines in question, but that included some materials similar to them. Further, from his testimony it seems that he did not record the number of places where he found materials portraying actual acts of "vaginal, anal or oral intercourse" or the number of such materials he found.

Dr. Scott's study was simply too unfocused and unspecific to provide him with a sufficient basis to give an expert opinion regarding whether the average adult applying contemporary community standards would find the magazines at issue to be patently offensive. His own testimony indicated that he did nothing more than investigate the availability and accessibility of materials that were only generally sexually oriented and that he defined as "adult materials." His testimony indicated that he made no effort in his study to identify or isolate any factors bearing on the average adult's reaction to materials that were limited to pictorial portrayals of actual acts of "vaginal, anal or oral intercourse." He did not inquire of anyone's views with regard to materials limited to such portrayals and did not determine what percentage of the magazines or other materials sold or viewed in Catawba County contained such portrayals. He made no effort to determine what percentage of the population of the county viewed x-rated movies or what percentage of such movies contained depictions of actual acts of "vaginal, anal or oral intercourse." In summary, his testimony did not tend to show that he

State v. Anderson

had gathered any data which would indicate whether the average adult applying contemporary community standards would find materials limited to pictorial portrayals of actual acts of "vaginal, anal or oral intercourse" to be patently offensive.

The trial court properly exercised its discretion by excluding Dr. Scott's expert opinion testimony concerning whether the magazines in question in this case were patently offensive to the average adult, applying contemporary community standards, on the ground that Dr. Scott was no better qualified than the jury to address the question and could not assist the jury. *See State v. Evangelista*, 319 N.C. at 163-64, 353 S.E. 2d 383-84. Certainly, we cannot say that the trial court abused its discretion when it excluded the proffered testimony on this ground. Therefore, we conclude that the Court of Appeals erred in awarding a new trial due to the trial court's exclusion of this evidence.

II.

This case is before us by virtue of our having allowed the State's petition for discretionary review only on the question of the admissibility of Dr. Scott's opinion testimony. The defendant, who was the appellant in the Court of Appeals, has brought forward additional issues that she properly presented for review by the Court of Appeals. Those issues, therefore, are properly before us. App. R. 16.

[2] The defendant first assigns as error the trial court's exclusion of certain evidence during the testimony of the defendant's expert witness Dr. Charles Winick. The Court of Appeals concluded that "the trial court's treatment of Dr. Winick's testimony was appropriate . . . ." *State v. Anderson*, 85 N.C. App. 104, 106, 354 S.E. 2d 264, 265 (1987). We agree.

At trial the defendant attempted to introduce the expert opinion testimony of Dr. Winick, a sociologist, concerning a survey or poll he conducted of certain residents of Catawba County. The questions asked and the responses to them include the following:

Q:2. In your opinion, have standards changed in recent years, so that depiction of nudity and sex are more acceptable or less acceptable in movies, video cassettes, publications and

other material depicting nudity and sex and available only to adults, but not to children? More acceptable—76%; less acceptable—24%; Neither/DK

Q:3. Do you agree or disagree that adults who want to, have the right to obtain and see movies, video cassettes, publications and other materials depicting nudity and sex and which are available only to adults, but not to children? Agree—80%; Disagree—17%; Neither/DK—3%

Q:4. Do you agree or disagree that adults who want to, have the right to patronize and make purchases at bookstores where publications and other materials depicting nudity and sex are available only to adults, but not to children? Agree—65%; Disagree—31%; Neither/DK

Q:5. Do you agree or disagree that adults who want to, have the right to patronize theatres where movies presenting nudity and sex are available only to adults, but not to children? Agree—75%; Disagree—25%; Neither/DK

Q:6. Do you think it is alright or not alright, for adults who wish to do so, to obtain and see in the privacy of their homes, movies, video cassettes, publications and other materials depicting nudity and sex which are available only to adults and not to children? All right—79%; Not all right—21%; Neither/DK

Q:7. We have used the words nudity and sex in the preceding questions. What we mean by these words includes exposure of the genitals and every kind of sexual activity, no matter how graphically depicted. Is that what you understood we meant, or did you think we meant something else? Understood—90%; Something else—10%

The trial court permitted the defendant to introduce the cumulative responses to survey question "Q:2" regarding changing standards and the responses to survey question "Q:7" concerning the manner of use of the phrase "nudity and sex." The trial court also permitted Dr. Winick to testify that in his opinion the survey demonstrated a "very high degree of acceptance and toleration of sexually explicit material" in Catawba County, and that he was using the phrase "sexually explicit material" as meaning materials similar to the magazines in question.

The trial court did not permit the defendant to introduce the cumulative responses to any of the other survey questions, however, which pertained to the views of those interviewed as to when, where, and how—if at all—adults should be able to obtain and view materials portraying nudity and sex. The trial court excluded this evidence for lack of relevance after concluding that the questions did not address the offensiveness of any material to the average person but, instead, related to "whether those interviewed wished to impose their beliefs or views on others."

We conclude that the trial court properly excluded the cumulative results of the survey with regard to questions 3, 4, 5, and 6. Those questions amounted to little more than a referendum on the desirability of the First Amendment and N.C.G.S. § 14-190.1. The issue the jury was to decide, however, was whether the average adult, applying contemporary community standards, would find that the magazines in question appealed to a prurient interest in sex in a patently offensive manner. The trial court did not abuse its discretion when it determined that the cumulative results of the responses to questions 3, 4, 5, and 6 would not assist the jury in resolving the issue before it and excluded those questions and results. *See State v. Evangelista*, 319 N.C. at 164, 353 S.E. 2d at 384; *State v. Knox*, 78 N.C. App. 493, 337 S.E. 2d 154; N.C.G.S. § 8C-1, Rule 702 (1986).

Additionally, it is clear from the transcript of the trial that the trial court was of the view that any probative value such evidence might have was substantially outweighed by the danger of confusion of the issues or danger of misleading the jury. It was within the discretion of the trial court to exclude the proffered testimony on that basis. *State v. Mason*, 315 N.C. at 731, 340 S.E. 2d at 434-35; N.C.G.S. § 8C-1, Rule 403 (1986). The trial court did not err in excluding the evidence in question, and this assignment of error is overruled.

### III.

[3] By her next assignment of error, the defendant contends that various portions of the jury arguments for the State amounted to prosecutorial misconduct so flagrant that the trial court committed reversible error in denying her resulting motion for a mistrial. The defendant first contends that it was reversible error for one of the prosecutors to argue to the jury:

Let me talk to you about this. If anything could be obscene, if anything could be obscene and these items which you, you have seen are not obscene, I don't know what it would take to be.

The defendant contends that this argument amounted to an expression of the prosecutor's personal belief in violation of N.C.G.S. § 15A-1230(a). Strictly speaking, the argument was not an expression of an opinion but, instead, a statement that the prosecutor would be unable to form an opinion as to what was obscene if the material before the jury was not. At most it amounted to a rhetorical statement implying that the State's evidence was overwhelming and contending that the jury should find the magazines in question obscene.

We have frequently held that counsel must be allowed wide latitude in jury arguments in hotly contested cases. *E.g., State v. Covington,* 317 N.C. 127, 343 S.E. 2d 524 (1986); *State v. Williams,* 314 N.C. 337, 333 S.E. 2d 708 (1985). Counsel may argue the facts in evidence and all reasonable inferences that may be drawn therefrom together with the relevant law in presenting the case. *State v. Covington,* 317 N.C. 127, 343 S.E. 2d 524. Whether counsel has abused this right is a matter ordinarily left to the sound discretion of the trial court. *Id.* Counsel may not, however, place before the jury incompetent and prejudicial matter by expressing personal knowledge, beliefs, and opinions not supported by evidence. *Id.* Upon objection, the trial court has the duty to censor remarks not warranted by the evidence or law and may, in cases of gross impropriety, properly intervene *ex mero motu. Id.* Applying these principles, we conclude that the previously quoted argument was within the latitude that may be allowed counsel in stating contentions and drawing inferences from the evidence. The trial court did not err in overruling the defendant's objection.

[4] The defendant next contends that the trial court erred by overruling her objection to the argument of one of the prosecutors that:

I contend to you that it is obviously obscene, clearly obscene and patently offensive. Picture after picture of anal intercourse. What is more unhealthy than anal intercourse? How could it be anything but obscene?

This argument also was within the latitude allowed counsel in stating contentions and arguing reasonable inferences to be drawn from the evidence. The trial court did not err in overruling the defendant's objection to this portion of the argument.

[5] The defendant next contends that the prosecutors made numerous misstatements of law in their closing arguments for the State and made statements that led the jury to make improper inferences of law. We have reviewed each of the portions of the arguments to which the defendant has taken exception in this regard. Even if it is assumed *arguendo* that the arguments included misstatements of law or statements that might have tended to mislead the jury as to the applicable law, we detect no prejudice to the defendant.

At the outset of the State's closing arguments to the jury, one of the prosecutors immediately emphasized to the jury:

Now, this case is, of course, one involving perhaps more of an unusual law and the attorneys, all of us will be arguing the law to you. I want to remind you that what I say to you now and what [other counsel] . . . all say to you first is not evidence and it is not the final word on the law. His Honor is the final word on the law. His Honor is the final word on the law and you should listen very carefully to his charge and apply the law which is your duty as jurors.

At the conclusion of the arguments of counsel, the trial court gave proper instructions on the applicable law. We conclude that those instructions, in the context of this case, cured any prejudice to the defendant which may have resulted from the possible misstatements of law in the prosecutors' arguments to which the defendant has excepted. *See State v. Gladden*, 315 N.C. 398, 340 S.E. 2d 673, *cert. denied*, --- U.S. ---, 93 L.Ed. 2d 166 (1986); *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976).

[6] The defendant next contends that the prosecutors "traveled outside the record in their arguments to the jury." She first complains that the prosecutors improperly attacked the credibility of her expert witness, Dr. Scott. At trial Dr. Scott had testified that he found a wide range of materials, including materials depicting vaginal, oral and anal intercourse, in a wide variety of locations, which included the convenience stores marked on a map he used

to illustrate his testimony. To rebut this testimony, the State introduced the testimony of Mr. Jack Shulter, Division Manager for Quick Stop Convenient Stores. Shulter testified that Quick Stop operated convenience stores at some of the locations marked in orange on Dr. Scott's map. Shulter further testified that those stores did not carry the magazines the defendant was accused of selling or any similar materials.

During the State's closing arguments, one of the prosecutors argued:

> What did Mr. Shulter, who was the district manager of the biggest stores in this county or chain in this county tell you? He tells you that you can't find anal intercourse material at these places that Dr. Scott has marked here in orange. He says that is preposterous.

The trial court sustained the defendant's objection to this portion of the arguments and ordered it stricken. The prosecutor then argued:

> It is your job as a jury to decide what is believable and what is not believable and I argue to you from testimony that you have heard from Mr. Shulter that everything that Mr. Scott testified to is unbelievable.

The trial court overruled the defendant's objection to this argument.

In arguing to the jury, the State may comment on any contradictory evidence as a basis for the jury's disbelief of a witness's testimony. *State v. Williams*, 314 N.C. 337, 333 S.E. 2d 708 (1985). Here, the argument allowed by the trial court was based upon Shulter's testimony and was a proper contention that, based on that testimony, the jury should disbelieve Dr. Scott. The trial court did not err in overruling the objection.

[7] The defendant also contends that the prosecutors went outside the record to express personal opinions at several other points during their arguments to the jury on behalf of the State. On each of the occasions complained of, however, the trial court sustained the defendant's objections, admonished the prosecutors, and expressly instructed the jury to disregard the argument in question. The record does not reflect that the prosecutors on any

of these occasions attempted to circumvent the ruling of the trial court or return to the improper arguments. Given this situation, the trial court's prompt curative instructions were sufficient to remove any possible prejudice that may have resulted from the remarks of the prosecutors. *State v. Bruce,* 315 N.C. 273, 337 S.E. 2d 510 (1985). This conclusion draws some additional support from the fact that the jury acquitted the defendant on two counts.

For the foregoing reasons, we conclude that the trial court did not err in denying the defendant's motion for a mistrial based upon alleged prosecutorial misconduct. This assignment of error is overruled.

IV.

[8]   The defendant next argues that N.C.G.S. § 14-190.1 is facially unconstitutional under the Constitution of North Carolina. In support of this contention, the defendant argues that the statute incorporates the *Miller* test for obscenity adopted by the Supreme Court of the United States. The defendant argues that the *Miller* test is "unworkable and unfair in the criminal context" and urges us to hold that our statute incorporating it is facially violative of the Constitution of North Carolina. We have recently rejected similar arguments and do so again here. *Cinema I Video v. Thornburg,* 83 N.C. App. 544, 351 S.E. 2d 305 (1986), *aff'd,* 320 N.C. 485, 358 S.E. 2d 383 (1987).

The defendant next argues that the statute is facially invalid under article I, sections 14 and 19 of the Constitution of North Carolina, because it fails to "provide guidance or uniformity in selection of the community by whose standards a defendant's conduct is to be judged." The defendant argues that the statute is fatally flawed in this regard because it does not specify that obscenity is to be judged in accordance with national or statewide "community standards" or otherwise specify the geographic area intended by the use of the term "community standards." When the same argument has been based upon the Constitution of the United States, it has been rejected. *Jenkins v. Georgia,* 418 U.S. 153, 41 L.Ed. 2d 642 (1974). We are constrained to conclude that this argument is equally untenable when based upon the Constitution of North Carolina. *See State v. Bryant and Floyd,* 285 N.C. 27, 203 S.E. 2d 27, *cert. denied,* 419 U.S. 974, 42 L.Ed. 2d 188 (1974). As presently constituted, N.C.G.S. § 14-190.1 is not facially

violative of the Constitution of North Carolina. *Cinema I Video v. Thornburg*, 83 N.C. App. 544, 351 S.E. 2d 305 (1986), *aff'd*, 320 N.C. 485, 358 S.E. 2d 383.

V.

The defendant next contends that the statute was unconstitutionally applied in the present case. In support of this contention, the defendant first renews her argument that the statute was rendered fatally defective because the jury was given no guidance as to "which community's standards" it was to apply in assessing the defendant's guilt. For reasons we have previously discussed in addressing the defendant's contentions as to facial unconstitutionality of the statute, we reject this contention as being without merit.

[9] The defendant next contends that the statute was applied in the present case in an unconstitutional manner, because the trial court's instructions permitted the jury to find the defendant guilty without finding that she knew the contents of the magazines she sold. She argues that, as a result, the jury was not required to find that she possessed the requisite intent and guilty knowledge to support a conviction. The trial court specifically instructed the jury in the present case that to satisfy the intent requirement of the statute, the State must prove that the defendant knew the content, character, and nature of the magazines when she sold them. The statute was constitutionally applied in this regard by the trial court, and the defendant's contention to the contrary is without merit.

[10, 11] Finally, the defendant contends that the statute was applied in violation of the First Amendment in the present case, because the jury was not directed to apply the "reasonable person standard" when determining whether the magazines in question, taken as a whole, lacked serious literary, artistic, political or scientific value. Unlike appeal to the prurient interest and patent offensiveness, the value of material alleged to be obscene may not be judged by contemporary community standards. *See Smith v. United States*, 431 U.S. at 301, 52 L.Ed. 2d at 335. Instead, the literary, artistic, political, or scientific value of material is to be determined based upon whether a "reasonable person" would find such value in the material, taken as a whole. *Pope v. Illinois*, 481 U.S. ---, 95 L.Ed. 2d 439 (1987). However, the Supreme Court of

the United States has indicated that the decision in a particular case as to whether to instruct the jury to apply the reasonable person test in this regard is a matter in the discretion of the trial court. *Id.* at --- n.3, 95 L.Ed. 2d at 445 n.3. In the present case, unlike the situation in *Pope*, the trial court did not erroneously instruct the jury that they should apply contemporary community standards in determining the value of the materials in question. Instead, the trial court merely failed to instruct the jury that it must apply a reasonable person standard. We conclude that this did not amount to prejudicial error. *Id.*

For the foregoing reasons, we conclude that the defendant received a fair trial free of prejudicial error. Accordingly, we reverse the holding of the Court of Appeals, which awarded the defendant a new trial, and remand this case for reinstatement of the judgments of the trial court.

Reversed and remanded.