STATE OF NORTH CAROLINA v. JEFF MAYES

No. 514A87

(Filed 7 September 1988)

1. Obscenity § 1— lack of statewide standard—not unconstitutional

The North Carolina Constitution does not require that a statewide standard be judicially incorporated into the North Carolina obscenity statute, N.C.G.S. § 14-190.1, in order to render the statute facially valid.

2. Obscenity § 1— failure to instruct the jury as to definition of community—no error

The trial court did not err in an obscenity prosecution by failing to specifically define the term community or to instruct the jury to reach a consensus as to the geographic bounds of the community standards they were to apply. The trial court's instruction properly permitted the jurors to apply the standards of the community in which the indictment was returned and from which the jurors came, as they found them to be, in deciding whether the magazines sold in that community were obscene. N.C.G.S. § 14-190.1.

3. Obscenity § 3— expert testimony—survey results inadmissible

The trial court did not err in an obscenity prosecution by refusing to admit certain survey responses and testimony relating thereto because the excluded survey questions had no relevance to what the community considered obscene.

4. Obscenity § 3— comparison magazines excluded—no error

The trial court did not err in an obscenity prosecution by refusing to admit into evidence two magazines purchased by a private investigator in a local

convenience store for comparison by the jury with the two allegedly obscene magazines which were the subject of the trial. Availability does not indicate community acceptance; it indicates only availability.

**5. Obscenity § 3— opinion as to value of materials—excluded—not prejudicial error**

    Although the trial court erred in an obscenity prosecution by excluding testimony that a professor had made a systematic study under accepted methodology of sexually explicit materials with relation to the first amendment and was of the opinion that the magazines in this case were not patently offensive, did not appeal to the prurient interest in sex, and had scientific, educational and political value, there was no prejudice because substantially the same testimony was admitted elsewhere.

ON defendant's petition for discretionary review pursuant to N.C.G.S. § 7A-31 of a decision of the Court of Appeals, 86 N.C. App. 569, 359 S.E. 2d 30 (1987), affirming a judgment entered by *Owens, J.,* at the 19 August 1986 Criminal Session of Superior Court, CLEVELAND County, upon defendant's conviction by a jury on two counts of disseminating obscenity in violation of N.C.G.S. § 14-190.1. Heard in the Supreme Court 12 May 1988.

*Lacy H. Thornburg, Attorney General, by Steven F. Bryant, Assistant Attorney General, for the State.*

*Lipsitz, Green, Fahringer, Roll, Schuller & James, by Herbert L. Greenman, and James, McElroy & Diehl, by Edward T. Hinson, Jr., for defendant-appellant.*

*Smith, Patterson, Follin, Curtis, James & Harkavy, by Michael K. Curtis, amicus curiae for the North Carolina Civil Liberties Union Foundation, Inc.; Ennis, Friedman & Bersoff, by Mark D. Schneider, amicus curiae for PHE, Inc.*

MEYER, Justice.

Defendant was convicted by a Cleveland County jury on two counts of disseminating obscene material in violation of N.C.G.S. § 14-190.1. The trial judge consolidated the offenses for the purpose of judgment and sentenced defendant to a term of one year's imprisonment, but suspended the sentence and placed defendant on supervised probation for five years. As a special condition of the probation, defendant was ordered to pay a $750.00 fine and to serve a six-month active prison term.

Defendant appealed his conviction to the Court of Appeals. The panel below, with one judge dissenting, found no error. Defendant entered notice of appeal on two statutory grounds: (1) the judgment of the Court of Appeals directly involves substantial questions arising under the Constitution of North Carolina, N.C.G.S. § 7A-30(1) (1986), and (2) there was a dissenting opinion in the Court of Appeals, N.C.G.S. § 7A-30(2) (1986). We allowed the State's motion to dismiss the appeal for lack of a substantial constitutional question, but allowed the defendant's petition for discretionary review as to issues in addition to those presented as the basis for the dissenting opinion in the Court of Appeals. The case thus is before us based on the dissenting opinion in the Court of Appeals and our discretionary grant of review of additional issues. We affirm the Court of Appeals' decision.

The State's evidence tended to show the following: Sergeant Ralph McKinney of the Cleveland County Sheriff's Department testified that he directed the department's vice and narcotics investigations. By virtue of his position, Sergeant McKinney was familiar with the Shelby III Adult Bookstore which is located west of Shelby, and on 1 October 1985, the date on which the revisions to the state's obscenity law (N.C.G.S. § 14-190.1) took effect, he paid the store a visit.

Dressed in civilian clothes, Sergeant McKinney drove to the store in an unmarked car. Upon arrival, he was met by defendant, who was standing in the store doorway. Defendant asked Sergeant McKinney if he was a "cop." McKinney responded by asking defendant if he "looked like a cop." Defendant then remarked that he had been expecting the police all day. Sergeant McKinney asked, "You mean this stuff is illegal now?" Defendant replied, "Under the new law, it is."

Sergeant McKinney then followed the defendant into the Shelby III Adult Bookstore. He described the store as featuring a mini movie theatre with individual booths and a large display area containing adult magazines, adult video tapes, and sexual novelties. After browsing in the store for about twenty minutes, McKinney selected two magazines and presented them to defendant at the cash register. Each magazine was wrapped in clear cellophane so that only its cover was visible. Defendant rang up the sale, and Sergeant McKinney paid for the magazines and left.

The State introduced both magazines into evidence at the trial. One magazine, *Express—The Pursuit of Pleasure*, contains several erotic stories, reviews of various erotic magazines and video tapes, interviews, advertisements, and many graphic and explicit photographs. The photographs portray nude and partially clad men and women engaged in a variety of sexual acts, including both vaginal and anal intercourse, fellatio, cunnilingus, masturbation, group sex, and bondage. The other magazine, *Cockscrew*, consists for the most part of graphic and explicit photographs of two men, sometimes nude and sometimes partially clad, engaging in fellatio, anal intercourse, and masturbation. A tenuous and scant story line accompanies the photographs.

Defendant did not testify. However, he attempted to present three witnesses on his behalf. The first was Dr. Terry Cole, a professor at Appalachian State University, who was subsequently qualified as an expert in speech and communication in the context of public communication. During voir dire, Dr. Cole expressed his opinion that the magazines did not depict sexual conduct in a patently offensive way and that, applying the contemporary community standards, the magazines did not appeal to the prurient interest in sex. Dr. Cole testified that in his opinion the magazines had serious political and scientific value. At the conclusion of the voir dire, the trial court refused to allow the introduction of any of Dr. Cole's testimony.

Defendant next offered the expert opinion testimony of Dr. Charles Winick, a psychologist and sex therapist, who, at defendant's request, had conducted a survey of North Carolina opinion on the explicit depiction of sexual conduct. The first question in the survey asked whether, in the opinion of those interviewed, changing standards in recent years had made the depiction of nudity and sex in materials made available only to adults more or less acceptable. The next four questions were directed to whether those persons interviewed believed that consenting adults should have the right to obtain and view materials which depict nudity and sex. The final question asked whether those persons interviewed understood that the references to "nudity and sex" in the previous questions meant "exposure of the genitals and every kind of sexual activity, no matter how graphically depicted."

The trial court allowed Dr. Winick to offer his expert opinion, based on the survey, that the two magazines were not patently

offensive and that they did not appeal to the average person's prurient interest in sex. Dr. Winick testified that the magazines had serious scientific value and that they were exceptional in their artistic handling of the subject matter. The trial court allowed Dr. Winick to introduce the cumulative responses to the first and final questions of the survey—the question concerning changing standards and the question concerning the definition of "nudity and sex" as used in the survey. The trial court did not permit the introduction of the cumulative responses to the intervening questions, however, concluding that those questions and answers were not relevant to any issue to be resolved at trial.

Finally, defendant called Jan Frankowitz, a private investigator, purportedly to lay the foundation for the admission into evidence of magazines comparable to those at issue. Mrs. Frankowitz testified that she purchased the two magazines proffered, *Allure* and *Club International,* at The Pantry, a local convenience store. The defense sought the introduction of these magazines as evidence of general acceptance in the community of sexually frank materials. The trial court rejected defendant's argument that they were relevant to prove the contemporary community standard and excluded defendant's offer of proof in toto.

Defendant brings forward two issues for this Court's consideration. First, whether the trial court erred in failing properly to instruct the jurors on the appropriate community standards to be applied in determining whether the two magazines were obscene; and second, whether the trial court erred in excluding not only evidence concerning contemporary community standards, but also expert opinion evidence relevant to the application of the obscenity test.

I.

North Carolina's obscenity statute, N.C.G.S. § 14-190.1 is modeled on the test enunciated by the United States Supreme Court in *Miller v. California,* 413 U.S. 15, 37 L.Ed. 2d 419 (1972). The statute provides in part:

(b) For purposes of this Article any material is obscene if:

(1) The material depicts or describes in a patently offensive way sexual conduct specifically defined by subsection (c) of this section; and

(2) The average person applying contemporary community standards relating to the depiction or description of sexual matters would find that the material taken as a whole appeals to the prurient interest in sex; and

(3) The material lacks serious literary, artistic, political, or scientific value; and

(4) The material as used is not protected or privileged under the Constitution of the United States or the Constitution of North Carolina.

N.C.G.S. § 14-190.1(b) (1986). At trial, defendant requested two jury instructions which would have required the jury to apply a statewide community standard under the "contemporary community standards" test in subsection (b)(2) of the statute. This request was denied. In its instructions to the jury, the trial court neither specifically defined the term "community standards," nor instructed the jurors to reach a consensus as to the geographic bounds of the community whose standards they were to apply.

[1] Defendant's first issue is twofold. Initially, he contends that the North Carolina Constitution requires that a statewide standard be judicially incorporated into N.C.G.S. § 14-190.1 in order to render the statute facially valid.

This question has been recently decided against defendant. *State v. Anderson*, 322 N.C. 22, 366 S.E. 2d 459 (1988). There, the defendant argued that N.C.G.S. § 14-190.1 was facially invalid under article I, sections 14 and 19 of the North Carolina Constitution because it failed to provide guidance or uniformity in selection of the community by whose standards a defendant's conduct was to be judged. Anderson contended that the flaw lay in the statute's failure to specify that obscenity was to be judged in accordance with national or statewide community standards or to specify the geographical area intended by the term "community standards." Defendant here makes the identical argument. In *Anderson* we dealt with the contention as follows:

> When the same argument has been based upon the Constitution of the United States, it has been rejected. *Jenkins v. Georgia*, 418 U.S. 153, 41 L.Ed. 2d 642 (1974). We are constrained to conclude that this argument is equally untenable when based upon the Constitution of North Carolina. *See State v. Bryant and Floyd*, 285 N.C. 27, 203 S.E. 2d 27, *cert. denied*, 419 U.S. 974, 42 L.Ed. 2d 188 (1974). As presently constituted, N.C.G.S. § 14-190.1 is not facially violative of the Constitution of North Carolina. *Cinema I Video v. Thornburg*, 83 N.C. App. 544, 351 S.E. 2d 305 (1986), *aff'd*, 320 N.C. 485, 358 S.E. 2d 383.

*Id.* at 40-41, 366 S.E. 2d at 470. Defendant's argument here is no more persuasive than was Anderson's.

[2] Defendant goes on to argue that the trial court erred in failing to instruct the jury as to precisely which community standards were relevant to their determination of whether the magazines were obscene. He contends that by instructing only that the jurors apply "contemporary community standards," the trial court left the appropriate "community" open to "sheer speculation" on the jury's part. The majority of the panel of the Court of Appeals held that the trial court did not err in failing to define the geographic boundaries of the jury's "community." We agree.

In *Jenkins v. Georgia*, 418 U.S. 153, 41 L.Ed. 2d 642 (1974), the trial court instructed the jury to apply "community standards" without defining the geographical limits of "community." The United States Supreme Court approved the instructions, stating:

> We agree with the Supreme Court of Georgia's implicit ruling that the Constitution does not require that juries be instructed in state obscenity cases to apply the standards of a hypothetical statewide community. *Miller* approved the use of such instructions; it did not mandate their use. What *Miller* makes clear is that state juries need not be instructed to apply "national standards." We also agree with the Supreme Court of Georgia's implicit approval of the trial court's instructions directing jurors to apply "community standards" without specifying what "community." *Miller* held that it was constitutionally permissible to permit juries to rely on the

understanding of the community from which they came as to contemporary community standards, and the States have considerable latitude in framing statutes under this element of the *Miller* decision. A State may choose to define an obscenity offense in terms of "contemporary community standards" as defined in *Miller* without further specification, as was done here, or it may choose to define the standards in more precise geographic terms, as was done by California in *Miller.*

*Id.* at 157, 41 L.Ed. 2d at 648. *See Hamling v. United States,* 418 U.S. 87, 41 L.Ed. 2d 590, *reh'g denied,* 419 U.S. 885, 42 L.Ed. 2d 129 (1974) (statewide standard not required); *Roth v. United States,* 354 U.S. 476, 1 L.Ed. 2d 1498 (1956) (fact that different juries could reach different results as to whether same material is obscene is normal consequence of jury system). As presently written, N.C.G.S. § 14-190.1 reflects the Legislature's choice in defining obscenity offenses in this state in terms of "contemporary community standards" without further specification. As the Court of Appeals majority noted, in the absence of a precise statutory specification of "community," the trial court properly declined to restrict or expand the term. Rather, it instructed the jury in part as follows:

Again, it is for you, members of the jury, to say and to decide what the contemporary community standards are, not your own standards but those of the average adult person in the community relating—with relation to the magazines depicting, illustrating or describing sexual conduct.

You are not to fix a community standard, members of the jury, at a level where you believe from a personal standpoint they should be but, rather, as you find them to be.

North Carolina is a large and diverse state. As the Court of Appeals majority pointed out, no realist would expect to find that the same standards exist throughout the state, or that the residents in one area of the state would have knowledge of the community standards held in another area. N.C.G.S. § 14-190.1 allows for such diversity. We note that the magazines in this case were sold in the same county from which the venire was drawn and defendant's petit jury was selected. *See* N.C.G.S. § 9-2 (1986). The trial court's instruction thus properly permitted the jurors to apply the standards of the community in which the indictment was

returned and from which the jurors came, as they found them to be, in deciding whether the magazines sold in that community were obscene. This task differs little from the manner in which jurors determine "the propensities of a 'reasonable' person in other areas of the law." *Hamling v. United States*, 418 U.S. 87, 104-05, 41 L.Ed. 2d 590, 613. The trial court did not err in failing specifically to define the term "community," or to instruct the jury to reach a consensus as to the geographic bounds of the community standards they were to apply.

II.

We turn now to the question of whether the trial court erred in excluding certain evidence and expert testimony proffered by the defendant.

[3] Dr. Charles Winick, a psychologist and sex therapist, conducted a survey at defendant's request among four hundred adults in forty-one counties for trial purposes. The survey included the following questions:

Q:2 In your opinion, have standards changed in recent years, so that depictions of nudity and sex are more acceptable or less acceptable in movies, video cassettes, publications, and other materials depicting nudity and sex and available only to adults, but not [to] children? . . . .

Q:3 Do you agree or disagree that adults who want to, have the right to obtain and see movies, video cassettes, publications and other materials depicting nudity and sex and which are available only to adults, but not to children? . . . .

Q:4 Do you agree or disagree that adults who want to, have the right to patronize and make purchases at bookstores where publications and other materials depicting nudity and sex and which are available only to adults, but not to children? . . . .

Q:5 Do you agree or disagree that adults who want to, have the right to patronize theatres where movies presenting nudity and sex are available only to adults, but not to children? . . . .

Q:6 Do you think it is alright [sic] or not alright [sic], for adults who wish to do so, to obtain and see in the privacy of their homes, movies, video cassettes, publications and other materials depicting nudity and sex, which are available only to adults and not to children? . . . .

Q:7 We have used the words nudity and sex in the preceding questions. What we mean by these words includes exposure of the genitals and every kind of sexual activity, no matter how graphically depicted. Is that what you understood we meant, or did you think we meant something else? . . . .

After conducting a voir dire, the trial court permitted Dr. Winick to testify concerning the responses to question 2 regarding changing standards and to question 7 concerning the manner of use of the phrase "nudity and sex," but excluded all testimony relating to questions 3 through 6. Defendant argues that the excluded survey responses and Dr. Winick's proffered testimony related thereto should have been allowed because they would have assisted the jury in determining contemporary community standards. The Court of Appeals concluded that the excluded survey questions had no relevance to what the community considered obscene. We agree.

The exact same survey questions were at issue in *State v. Anderson*, 322 N.C. 22, 366 S.E. 2d 459, although there Dr. Winick only conducted the survey among the residents of Catawba County. There, as here, the trial court allowed testimony concerning questions 2 and 7, but excluded the remainder. Having reviewed the excluded questions in *Anderson*, we stated:

We conclude that the trial court properly excluded the cumulative results of the survey with regard to questions 3, 4, 5, and 6. Those questions amounted to little more than a referendum on the desirability of the First Amendment and N.C.G.S. § 14-190.1. The issue the jury was to decide, however, was whether the average adult, applying contemporary community standards, would find that the magazines in question appealed to a prurient interest in sex in a patently offensive manner. The trial court did not abuse its discretion when it determined that the cumulative results of the responses to questions 3, 4, 5, and 6 would not assist the jury

in resolving the issue before it and excluded those questions and results. *See State v. Evangelista*, 319 N.C. at 164, 353 S.E. 2d at 384; *State v. Knox*, 78 N.C. App. 493, 337 S.E. 2d 154; N.C.G.S. § 8C-1, Rule 702 (1986).

*Id.* at 36, 366 S.E. 2d at 468. *Anderson* is dispositive here. The trial court properly excluded questions 3, 4, 5 and 6 and their results, as well as Dr. Winick's related testimony.

[4] Defendant next contends that the trial court erred in refusing to admit into evidence two magazines purchased by Mrs. Jan Frankowitz, the private investigator, in a local convenience store for comparison by the jury with the two allegedly obscene magazines which were the subject of the trial. The trial court found the "comparison" magazines to be irrelevant. Defendant argues that the availability of the magazines that Mrs. Frankowitz bought indicated community acceptance. We disagree.

The fallacy in defendant's argument is that availability does not indicate community acceptance; it indicates only availability. We agree with the Court of Appeals that availability of similar material alone means nothing more than that other persons are engaged in disseminating similar material. Evidence of mere availability of similar materials is not by itself sufficiently probative of community standards to be admissible in the absence of proof that the material enjoys a reasonable degree of community acceptance. *See Hamling v. United States*, 418 U.S. 87, 41 L.Ed. 2d 590; *United States v. Manarite*, 448 F. 2d 583 (2d Cir.), *cert. denied*, 404 U.S. 947, 30 L.Ed. 2d 264 (1971). The trial court did not err in excluding this evidence.

[5] Finally, defendant argues that the trial court erred in refusing to permit Dr. Terry Cole, a professor at Appalachian State University, to testify. Dr. Cole would have testified that he had made a systematic study under accepted methodology of sexually explicit materials with relation to the first amendment to the United States Constitution and N.C.G.S. § 14-190.1, and that based on this study, he held the opinion that the magazines in this case were not patently offensive and did not appeal to the prurient interest in sex. Dr. Cole would have testified further that the magazines had scientific, educational and political value based upon their use in marriage and sex counseling, in the classroom setting and in communication of ideas among the general

population. We agree with defendant that the trial court's refusal to admit the testimony was error, but we conclude that the error was harmless.

Dr. Cole was accepted by the trial court as an expert in "speech and communication in the context of public communication." He had years of experience in teaching speech communication, including the use of sexually explicit materials, at a North Carolina university. He had used magazines of the type at issue here throughout his teaching career to assist students in the understanding and application of the first amendment and state law relating to obscenity. He had made a specific study of the subject. In our view, he was qualified to give his expert opinion that the magazines in this case were not patently offensive and did not appeal to the prurient interest in sex. However, the jury was not deprived of the essence of Dr. Cole's testimony in arriving at its verdict because that portion of Dr. Winick's testimony which was admitted covered substantially the same ground. Dr. Winick testified that the magazines were not patently offensive and that they did not appeal to the prurient interest in sex. He also testified that they had artistic and scientific value. "[A] litigant is not harmed by the exclusion of testimony, when the same, or substantially the same, testimony is subsequently admitted." *Powell v. Daniel*, 236 N.C. 489, 492, 73 S.E. 2d 143, 145 (1952). Defendant suffered no prejudice by the exclusion of Dr. Cole's testimony.

We conclude that defendant's trial was free of prejudicial error. The opinion of the Court of Appeals is therefore

Affirmed.