STATE OF NORTH CAROLINA v. CALVIN WILSON, JR.

No. 68A93

(Filed 3 December 1993)

1. **Criminal Law § 460 (NCI4th) — murder — prosecutor's argument concerning defendant's alibi — no error**

The trial court did not err in a first-degree murder prosecution by overruling defendant's objection to the prosecutor's closing argument where defendant introduced alibi evidence that he had been in a motel when the shooting occurred and the prosecutor attempted to discredit defendant's alibi by arguing that money could buy a lot of things, including a motel record. Although defendant contended that the argument was without basis in the record because there was no evidence that he had purchased the registration record, the prosecutor did not argue that the record had been bought. The argument was a legitimate inference because defendant could legitimate-

ly create such a record by renting a motel room if he had the money whether he intended to use the room or not.

**Am Jur 2d, Trial §§ 609 et seq.**

2. **Evidence and Witnesses § 761 (NCI4th)— testimony that State's witness on drugs—excluded—no prejudice**

There was no prejudice in a first-degree murder prosecution, assuming error, where the court excluded testimony from a defense witness that a State's witness to the murder had been on drugs at the time. The defense witness also testified that the State's witness was not at the scene, so that whether the witness was on drugs would be irrelevant if the defense witness was believed. Moreover, the State's witness herself testified on direct examination that she was addicted to heroin and cocaine at the time of the murder and used drugs on that day.

**Am Jur 2d, Appeal and Error § 806.**

3. **Evidence and Witnesses § 2954 (NCI4th)— first-degree murder—cross-examination—whether witness paid to testify— no error**

There was no error in a first-degree murder prosecution where the court allowed the prosecutor to ask a defense witness whether defendant had paid her to testify where the trial court required the prosecutor to give his basis for the question and the prosecutor stated that he had received information that the witness sold drugs for defendant, was unemployed and lived at defendant's house, and inferred that the witness would do anything she could to help defendant.

**Am Jur 2d, Witnesses § 888.**

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgment imposing a sentence of life imprisonment entered by Beal, J., at the 20 July 1992 Criminal Session of Superior Court, Mecklenburg County, upon a jury verdict of guilty of first-degree murder. Heard in the Supreme Court 17 September 1993.

*Michael F. Easley, Attorney General, by Jeffrey P. Gray, Assistant Attorney General, for the State.*

*Malcolm Ray Hunter, Jr., Appellate Defender, by Janine M. Crawley, Assistant Appellate Defender, for defendant-appellant.*

STATE v. WILSON

[335 N.C. 220 (1993)]

PARKER, Justice.

Defendant was charged in an indictment, proper in form, with the first-degree murder of William Sanders. There being no evidence of aggravating circumstances, defendant was tried noncapitally and convicted by the jury of first-degree murder on the theory of premeditation and deliberation. The trial court imposed the mandatory sentence of life imprisonment. We find defendant received a fair trial free of prejudicial error.

State's evidence tended to show that on 18 June 1991 around 8:30 p.m., Lynn Ellen Morrow was at the home of defendant's sister, Teresa, who lived on Wayt Street in Charlotte, North Carolina. Morrow looked out the living room window and saw defendant, whom she knew as "Wine," drive up in a black Jeep. Morrow knew defendant because the two had grown up in the same residential area of Charlotte and attended the same junior high school. In junior high school, defendant's brother was Morrow's boyfriend. Defendant came into Teresa's house and asked Morrow if she knew where William Sanders and Larry Manns were. Morrow answered that she thought Sanders, who had been at Teresa's house about an hour earlier, was in South Carolina. Sanders had rented and was driving a white Pontiac automobile. Defendant responded that he had seen Sanders' car parked near Teresa's house. He said to Morrow, "Come on, I'll show you." The two went out of the house and began walking toward Oaklawn Avenue. The weather was clear; it was still daylight. As they approached the Pontiac, it began to pull out of a driveway, and defendant started running toward the car. Morrow saw defendant reach into his shirt and pull out a pistol. Morrow also began to run and asked defendant, "Wine, what are you doing?" When defendant reached the car, he shot into the car two or three times. Morrow stopped running about twenty-five feet from the car. She could see that the victim was the driver of the car. Another person, who was in the passenger seat, got out of the car and ran away. Morrow could see only the back of the person who fled. Defendant shot into the car again, and it rolled across Wayt Street and struck a utility pole. Defendant ran to his Jeep and drove away. Morrow also left and went to the residence of Richard Latimer, where she purchased heroin.

Harvey Neal Hinton testified that on 18 June 1991 he was visiting his mother, who resided at 2008 Wayt Street. Around 8:30 p.m., Hinton was sitting at the kitchen table eating dinner. It was

still light outside, and as Hinton looked out the window he saw the victim, whom Hinton knew, and another man, whom Hinton did not know, get into a car. In a few seconds Hinton again looked out the window and saw that the car had pulled into Wayt Street. Hinton saw a third man who "had been running. He ran up to the car. From the way he was leaning, seemed like he had just stopped running, really. And he just started shooting into the car." Hinton recognized the shooter as defendant. Defendant, who held the gun in his right hand, fired three shots, turned away slightly to the left, turned back, fired twice more, and then ran away.

Eric Lorenzo Davis testified that he was in the car with the victim that day. Davis did not know the victim well, but the victim had offered Davis a ride home. Davis got into the front passenger seat of the white car. The victim started the car, and as it rolled out of the driveway, Davis looked to his left and saw a revolver. Davis immediately got out of the car and ran away. He heard about five shots in all. He described a revolver as "[t]he gun that you got it and you don't have to put no clips in it."

State's medical evidence showed that two bullets were removed from the victim's body. The cause of death was a gunshot wound to the victim's chest. Other evidence showed that no spent casings were recovered from the victim's automobile, but holes in the interior of the vehicle were consistent with shots having been fired from the driver's side. Although no murder weapon was recovered, the two bullets from the victim's body and another bullet found on the floorboard of the car were all of nine millimeter caliber. All had been fired from the same gun, likely a revolver.

Defendant's evidence included the testimony of Valerie Wall, who stated that on 18 June 1991 around 7:00 p.m. she went to Richard Latimer's house on Abelwood Street in Charlotte. State's witness Morrow was there and remained there until Wall left, around 11:30 p.m. Marilyn Sloan testified that she gave Wall a ride to Latimer's and saw Morrow standing in the doorway of the house.

Zubair Ahmed, general manager of a motel on Statesville Road, authenticated a motel registration record indicating defendant was a guest there on 18 June 1991. Ahmed testified the record showed defendant checked in at 2:35 p.m. In addition, defendant's alibi evidence included testimony by his girlfriend, Brenda Alexander,

that she was with defendant when he checked into the motel and the two remained there until midmorning of the next day.

The trial court denied defendant's motions to dismiss made at the close of State's evidence and at the close of all evidence. Additional facts necessary to an understanding of defendant's contentions are included in the discussion which follows.

[1] Defendant's first contention is that the trial court erred in overruling defense counsel's objection to the prosecutor's closing argument. We disagree with this contention.

In arguing to the jury the prosecutor attempted to discredit defendant's alibi as follows:

> I would contend to you that the defendant knew what he was going to do and he knew that he needed an alibi. What better place to get an alibi than a motel room?
>
> I mean what they want you to believe, that he has a girlfriend who he just happened, on June 18th, to want to go to a motel with. He's got a big house over there with that big fence around it. On Munsee. On Munsee Street. It's over there. She knows where it is. Doesn't make sense. All of a sudden they want to go to a motel. Don't believe that.
>
> . . . [The defendant's girlfriend] wasn't no bit more over at no motel with that defendant than the man in the moon. Doesn't make any sense.
>
> . . . .
>
> And money. Money. Money can buy a lot of things. Money can buy this [indicating defendant's Exhibit 4, the motel record.]

Defendant argues that since no evidence showed he purchased the registration record, the prosecutor's remarks constituted argument without any basis in the record or expression of a personal belief or suspicion. We do not find these arguments persuasive.

In closing argument, an attorney may not make arguments based on matters outside the record but may, based on "his analysis of the evidence, argue any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230 (1988). In addition, this Court has summarized its holdings on this question as follows:

STATE v. WILSON

[335 N.C. 220 (1993)]

We have frequently held that counsel must be allowed wide latitude in jury arguments in hotly contested cases. *E.g.*, *State v. Covington*, 317 N.C. 127, 343 S.E.2d 524 (1986); *State v. Williams*, 314 N.C. 337, 333 S.E.2d 708 (1985). Counsel may argue the facts in evidence and all reasonable inferences that may be drawn therefrom together with the relevant law in presenting the case. *State v. Covington*, 317 N.C. 127, 343 S.E.2d 524. Whether counsel has abused this right is a matter ordinarily left to the sound discretion of the trial court. *Id.* Counsel may not, however, place before the jury incompetent and prejudicial matter by expressing personal knowledge, beliefs, and opinions not supported by evidence. *Id.* Upon objection, the trial court has the duty to censor remarks not warranted by the evidence or law and may, in cases of gross impropriety, properly intervene *ex mero motu. Id.*

*State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468, *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988).

Applying these principles, we find the prosecutor's argument was within the wide latitude allowed counsel in stating contentions and drawing inferences from the evidence. The prosecutor argued first and made no mention of defendant's alibi argument. Defense counsel argued next, emphasizing the veracity of the motel record. Arguing last, and in response, the prosecutor did not express a personal opinion or belief by suggesting that money could buy such a record. Instead, this was a legitimate inference, as defendant could legitimately create such a record by renting a motel room if he had the money whether he intended to use the room or not. The prosecutor did not argue that the record had in fact been bought. Therefore, we conclude the trial court did not err in overruling defendant's objection.

[2] Defendant next contends the trial court erred by excluding testimony from defense witness Wall that State's witness Morrow was under the influence of drugs at the time of the murder. Defendant preserved the alleged error by making an offer of proof during Wall's testimony. We disagree with defendant's contention.

Wall testified that Morrow was not on Wayt Street when the murder occurred. Accordingly, if Wall's testimony were believed by the jury, Morrow could not have seen the events to which she testified. Hence, whether Morrow was under the influence of drugs would be irrelevant, and exclusion of Wall's

testimony on this point could not have prejudiced defendant. Relevant evidence is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." N.C.G.S. § 8C-1, Rule 401 (1992). Evidence that is not relevant is not admissible. N.C.G.S. § 8C-1, Rule 402 (1992). To show prejudice defendant must demonstrate that there was a reasonable possibility that had the alleged error not occurred, a different result would have been reached at trial. N.C.G.S. § 15A-1443(a) (1988). Morrow herself testified on direct examination that she was addicted to heroin and cocaine at the time of the murder and used these drugs on that day. Under these circumstances, assuming *arguendo* that exclusion of the evidence was error, we conclude defendant has failed to show prejudice arising from exclusion of the proffered evidence, *see id.; State v. Weeks*, 322 N.C. 152, 169, 367 S.E.2d 895, 905 (1988) (finding no prejudice where substantially the same testimony was also admitted), and the trial court did not err in excluding it.

[3]   Finally defendant contends the trial court erred by permitting the prosecutor to inquire of defense witness Sloan whether defendant paid her to testify. Again we disagree. The Rules of Evidence permit cross-examination of a witness "on any matter relevant to any issue in the case, including credibility." N.C.G.S. § 8C-1, Rule 611(b) (1992). This Court has said that the scope of cross-examination is subject to the control of the trial judge and "the questions must be asked in good faith." *State v. Williams*, 279 N.C. 663, 675, 185 S.E.2d 174, 181 (1971); *see also* 1 Henry Brandis, Jr., *Brandis on North Carolina Evidence* § 111 (3d ed. 1988) (reiterating good faith requirement).

We note first that the trial court required the prosecutor to give his basis for asking the challenged question. The prosecutor stated he had received information from an acquaintance of Sloan that Sloan sold drugs for defendant. From this the prosecutor inferred that Sloan would do "anything she can to help [defendant]." In addition, the prosecutor argued that Sloan testified she was unemployed and lived at defendant's house on Munsee Street. From the record, we conclude the trial court did not err in overruling defendant's objection to the prosecutor's question.

For the foregoing reasons we hold defendant received a fair trial free of prejudicial error.

NO ERROR.