STATE OF NORTH CAROLINA v. ANTIONE DENARD ALLEN

STATE OF NORTH CAROLINA v. MARSHALL DEWONE GILLESPIE

No. 68A00

(Filed 8 June 2001)

**Criminal Law— prosecutor's argument—credibility of hearsay statements—communication of judge's ruling**

A prosecutor violated N.C.G.S. § 15A-1230(a) in a first-degree murder prosecution by traveling outside the record in his closing argument to disclose the legal opinion of the trial court as to the credibility of hearsay evidence where a witness had returned to Mexico and was unavailable, the court allowed an officer to testify as to her statements, and the prosecutor argued that the court had found the statements to be trustworthy and reliable. The jurors were not entitled to hear the trial judge's legal findings and conclusions regarding the admissibility of these hearsay statements, the argument clearly conveyed an opinion as to the credibility of the evidence attributed directly to the trial judge in his presence, and the judge then overruled defendant's objection. Special care must be taken against expressing or revealing to the jury legal rulings which have been made by the trial court; although this court did not convey an improper opinion in its own words, it did allow the prosecutor to convey the court's opinion with virtually the same effect. Much of the State's evidence was circumstantial and this evidence was possibly determinative; it cannot be said that there is no reasonable possibility of a different result without this argument.

Appeal as of right pursuant to N.C.G.S. § 7A-27(a) from judgments imposing a sentence of death upon each defendant entered by Cornelius, J., on 5 August 1999 in Superior Court, Forsyth County, upon jury verdicts finding defendants guilty of first-degree murder. On 22 February 2000 and 10 April 2000, the Supreme Court allowed

defendant Gillespie's and defendant Allen's respective motions to bypass the Court of Appeals as to their appeals of additional judgments. Heard in the Supreme Court 12 February 2001.

*Roy A. Cooper, Attorney General, by Ellen B. Scouten, Special Deputy Attorney General, for the State.*

*Robert K. Leonard and Teresa L. Hier for defendant-appellant Allen.*

*F. Kevin Mauney and Nils E. Gerber for defendant-appellant Gillespie.*

LAKE, Chief Justice.

Defendants Antione Denard Allen and Marshall Dewone Gillespie were indicted for the murders of Feliciano Noyola and Esmeralda Noyola, and were tried capitally at the 12 July 1999 Criminal Session of Superior Court, Forsyth County. The jury found each defendant guilty of two counts of first-degree murder under the felony murder rule. Following a capital sentencing proceeding, for the murder of Esmeralda Noyola, the jury recommended a sentence of death for defendant Gillespie and life imprisonment without parole for defendant Allen. For the murder of Feliciano Noyola, the jury recommended a sentence of death for defendant Allen and life imprisonment without parole for defendant Gillespie. On 5 August 1999, the trial court sentenced each defendant to one sentence of death and one sentence of life imprisonment, in accordance with the jury's recommendations.

After a thorough review of the issues raised on appeal and for the reasons discussed herein, we conclude that defendants are entitled to a new trial.

The State's evidence at trial tended to show that the victims resided in an apartment at 1231-B Gholson Street in Winston-Salem, North Carolina. At approximately 7:10 p.m. on the evening of 27 January 1998, Officer T.G. Brown of the Winston-Salem Police Department arrived at this apartment in response to a reported shooting. Officer Brown entered the apartment and found two Hispanic women, later identified as Maria Santos and Justina Dominguez. Both women were crying and agitated, and neither woman spoke English. Ms. Santos showed Officer Brown a child, later identified as Esmeralda Noyola, who was lying on the floor inside one of the bedrooms. She exhibited no signs of life. Officer

Brown also saw the body of a man, later identified as Feliciano Noyola, lying on the kitchen floor. The officer placed Ms. Santos and Ms. Dominguez in a vacant bedroom and called for an ambulance and additional officers.

United States Secret Service Agent Rafael Barros responded to Officer Brown's request for additional officers. Agent Barros testified at trial that he was employed by the Winston-Salem Police Department in January 1998 and that he speaks Spanish fluently. At approximately 7:20 p.m., he arrived at the scene of the incident and spoke with Ms. Santos and Ms. Dominguez. Ms. Santos told him that she was the mother of Esmeralda Noyola. Ms. Santos also told him that three black males entered the apartment through the front door, demanded money and shot Feliciano Noyola and her daughter. Agent Barros also testified that Ms. Santos appeared confused and was unable to provide an accurate description of the suspects at that time.

Ms. Dominguez told Agent Barros that she was the wife of Feliciano Noyola. She also told him that while she was in a bedroom feeding her baby, a black male entered, grabbed the gold chain she was wearing from her neck and left the room. Ms. Dominguez then heard people arguing and heard gunshots, but she never left the bedroom while the intruders were in the apartment.

On 28 January 1998, Agent Barros showed a photographic lineup to Ms. Santos and Ms. Dominguez. Agent Barros testified that Ms. Santos identified the picture of defendant Gillespie as the man who shot her daughter, but he also stated that she was not positive in her selection. Ms. Dominguez did not identify defendant Gillespie. Neither woman identified defendant Allen.

Both women subsequently returned to Mexico. Agent Barros testified that he attempted to persuade them to return to the United States for trial. He told the two women that he would travel to Mexico and assist them in returning to the United States, including entering the country legally for the trial. He informed them that transportation and accommodations would be arranged and paid for by a governmental agency, and that child-care assistance would be provided. Despite these efforts, both women refused to return for the trial. Ms. Santos told Agent Barros that she could not return because she had to care for her sick mother. Ms. Dominguez stated that she could not return because she had to care for her three children. Subpoenas

were issued for both Ms. Santos and Ms. Dominguez, but they were returned unserved.

Stephon Hairston and Kenyon Grooms also testified as witnesses for the State. Hairston admitted his involvement in the robbery. He testified that five men, including Grooms, the two defendants and himself, proceeded to Gholson Street to commit the robbery on the evening of 27 January. He also stated that defendant Gillespie carried a nine-millimeter semiautomatic pistol the night of the murders. Both Hairston and Grooms testified that defendant Allen carried an assault rifle before he entered the apartment.

On 28 January 1998, Dr. Patrick E. Lantz, a forensic pathologist, performed autopsies on both victims. Dr. Lantz found entrance and exit gunshot wounds and multiple projectile fragments in the abdomen area of Feliciano Noyola. Dr. Lantz stated that the bullet entered on the right side of the abdomen and hit the liver, right kidney and spine, where it fragmented and hit the aorta and left kidney, and exited at the hipbone. The wounds to Feliciano Noyola and bullet fragmentation found in his body were characteristic of a high-powered rifle. Dr. Lantz also found an entrance gunshot wound over the left shoulder blade and an exit wound on the right side of the neck of Esmeralda Noyola. The wounds were consistent with having been caused by a nine-millimeter bullet.

On appeal, defendants contend that the trial court committed reversible error in allowing the prosecutor to improperly convey to the jury a ruling made by the trial court concerning the admissibility of Ms. Santos' statements, in violation of N.C.G.S. § 15A-1230. Specifically, the trial court ruled on *voir dire* that the first statements made by Ms. Santos and Ms. Dominguez to the officer at the scene on the evening of 27 January 1998 were admissible, through the testimony of Agent Barros, under Rules 803(1) and 803(2) of the North Carolina Rules of Evidence, which establish the admissibility of hearsay evidence conveying present-sense impressions and excited utterances, respectively. N.C.G.S. § 8C-1, Rules 803(1)-(2) (1999). The trial court also ruled that the statements and photographic identification made by Ms. Santos on 28 January 1998 were admissible, through the agent's testimony, under Rule 804(b)(5) of the North Carolina Rules of Evidence, which establishes the residual exception to the prohibition of hearsay evidence. N.C.G.S. § 8C-1, Rule 804(b)(5) (1999). The trial court made these rulings outside the presence of the jury.

We note the assignments of error brought forward on appeal by defendants with respect to these rulings themselves, and while we have some reservation as to the rationales proffered by the trial court for the underlying admissibility of several of the hearsay statements given to Agent Barros, we conclude these issues are not dispositive and, in any event, will be unlikely to arise at retrial. We therefore address the more fundamental issue of undue prejudicial error in the prosecutor's closing argument concerning these same statements.

During closing arguments in the guilt-innocence phase of the trial, the prosecutor stated, in part:

> We told you in the beginning we didn't have an eyewitness, but we do have an eyewitness, we have Maria Santos. She's an eyewitness in this case and she spoke through you—to you through the words of Rafael Barros who talked to her that night. She described what she saw, how many people entered her house. And you heard her words through Officer Barros, because the Court let you hear it, because the Court found they were trustworthy and reliable. . . . If there had been anything wrong with that evidence, you would not have heard that.

Counsel for defendant Gillespie objected to this portion of the argument, and the trial court overruled the objection. Defendants now contend that the prosecutor's argument impermissibly traveled outside the record, and the trial court's ruling in allowing this argument to go forward over objection was error. We agree.

We have repeatedly stated that "[i]n both the guilt-innocence and the sentencing phases of a capital trial, counsel is permitted wide latitude in his argument to the jury. He may argue the facts in evidence and all reasonable inferences therefrom as well as the relevant law." *State v. Sanderson*, 336 N.C. 1, 15, 442 S.E.2d 33, 42 (1994) (citations omitted). " 'Counsel may not, however, place before the jury incompetent and prejudicial matter by expressing personal knowledge, beliefs, and opinions not supported by evidence.' " *State v. Wilson*, 335 N.C. 220, 225, 436 S.E.2d 831, 834 (1993) (quoting *State v. Anderson*, 322 N.C. 22, 37, 366 S.E.2d 459, 468, *cert. denied*, 488 U.S. 975, 102 L. Ed. 2d 548 (1988)). The determination of " '[w]hether counsel has abused this right is a matter ordinarily left to the sound discretion of the trial court.' " *Id.* (quoting *Anderson*, 322 N.C. at 37, 366 S.E.2d at 468). Upon objection, however, " 'the trial court has the duty to censor remarks not warranted by the evidence or law.' " *Id.* (quoting *Anderson*, 322 N.C. at 37, 366 S.E.2d at 468).

Specifically, N.C.G.S. § 15A-1230(a) provides as follows:

During a closing argument to the jury an attorney may not become abusive, inject his personal experiences, express his personal belief as to the truth or falsity of the evidence or as to the guilt or innocence of the defendant, or make arguments on the basis of matters outside the record except for matters concerning which the court may take judicial notice. An attorney may, however, on the basis of his analysis of the evidence, argue any position or conclusion with respect to a matter in issue.

N.C.G.S. § 15A-1230(a) (1999). In this regard, this Court has repeatedly stressed that counsel may not "travel outside the record" by arguing facts or matters not included in the evidence of record. *State v. Smith*, 352 N.C. 531, 560, 532 S.E.2d 773, 791-92 (2000), *cert. denied*, —— U.S. ——, 149 L. Ed. 2d 360 (2001); *Sanderson*, 336 N.C. at 15-16, 442 S.E.2d at 42; *Wilson*, 335 N.C. at 224-25, 436 S.E.2d at 834; *Anderson*, 322 N.C. at 37, 366 S.E.2d at 468; *State v. Covington*, 317 N.C. 127, 130-31, 343 S.E.2d 524, 526-27 (1986); *State v. Williams*, 314 N.C. 337, 358, 333 S.E.2d 708, 722 (1985); *State v. Monk*, 286 N.C. 509, 515, 212 S.E.2d 125, 131 (1975).

In order to demonstrate prejudicial error, a defendant must show that there is a reasonable possibility a different result would have been reached had the error not occurred. N.C.G.S. § 15A-1443(a) (1999); *State v. Rosier*, 322 N.C. 826, 829, 370 S.E.2d 359, 361 (1988). During closing arguments in the instant case, the prosecutor traveled well beyond the record when he stated to the jury that not only had the trial court let the jury hear these statements, but also that the court had "found" the statements of Ms. Santos "trustworthy and reliable." This portion of the argument was not part of the evidence presented to the jurors. Rather, it was a second-hand statement or revelation of the trial judge's legal determination or opinion on the evidence made during a hearing properly held outside the jury's presence. The jurors were not entitled to hear the trial judge's legal findings and conclusions regarding the admissibility of these hearsay statements. This argument clearly conveyed an opinion as to the credibility of evidence that was before the jury. This opinion was attributed directly to the trial judge in his presence, and he then overruled defendant's objection to this revelation.

Parties in a trial must take special care against expressing or revealing to the jury legal rulings which have been made by the trial

court, as any such disclosures will have the potential for special influence with the jurors. *See* N.C.G.S. § 15A-1222 (1999) (stating that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury"). As we have stated: " 'The trial judge occupies an exalted station. Jurors entertain great respect for his opinion, and are easily influenced by any suggestion coming from him. As a consequence, he must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury.' " *State v. Belk,* 268 N.C. 320, 324, 150 S.E.2d 481, 484 (1966) (quoting *State v. Carter,* 233 N.C. 581, 583, 65 S.E.2d 9, 10 (1951)); *accord McNeill v. Durham County ABC Bd.,* 322 N.C. 425, 429, 368 S.E.2d 619, 622 (1988).

"In *State v. Simpson,* 233 N.C. 438, 442, 64 S.E.2d 568, [571 (1951)], this Court said: "It can make no difference in what way or manner or when the opinion of the judge is conveyed to the jury, whether directly or indirectly, by comment on the testimony of a witness, by arraying the evidence unequally in the charge, by imbalancing the contentions of the parties, by the choice of language in stating the contentions, or by the general tone and tenor of the trial. . . . 'The slightest intimation from a judge as to the strength of the evidence or as to the credibility of a witness will always have great weight with the jury, and, therefore, we must be careful to see that neither party is unduly prejudiced by an expression from the bench which is likely to prevent a fair and impartial trial.'—*Walker, J.* in *[State] v. Ownby,* 146 N.C. 677, [678-79,] 61 S.E. 630[, 630 (1908)]."

*State v. Williamson,* 250 N.C. 204, 207, 108 S.E.2d 443, 445 (1959).

The prosecutor's argument in the instant case spoke to and disclosed a legal opinion of the trial court on the admissibility and credibility of evidence, an opinion which was specifically outside the record. This argument may not be characterized as a reasonable "analysis of the evidence" or as argument for "any position or conclusion with respect to a matter in issue." N.C.G.S. § 15A-1230(a). As this Court stated in *State v. Williamson,* it does not matter "in what way or manner" an opinion of the trial court is conveyed to the jury, "whether directly or indirectly." *Williamson,* 250 N.C. at 207, 108 S.E.2d at 445. The potential for prejudicial influence remains, even if the opinion is conveyed indirectly through a party's closing argument to the jury. Although the trial court in the instant case did not convey, through its own words, an improper opinion to the jury, it did allow

## IN RE HAYES

[353 N.C. 511 (2001)]

the prosecutor to convey the court's opinion, with virtually the same effect.

In view of the foregoing, we cannot say that there is or can be no reasonable possibility that a different result would have been reached had this argument not occurred. Much of the State's evidence in the trial of these cases was circumstantial and placed both defendants at the scene of the crimes. Ms. Santos' statements to Agent Barros provided eyewitness evidence about the perpetrators and the events that transpired inside the apartment on the night of the murders. Although her credibility was at issue, particularly as to the identity of the perpetrators, her statements were possibly determinative of the verdicts in this trial as to both defendants.

We therefore conclude that the prosecutor violated N.C.G.S. § 15A-1230(a) by traveling outside the record during his closing argument and in so doing disclosing the legal opinion of the trial court as to the credibility of the evidence before the jury. For the reasons stated, the trial court's allowance of the prosecutor's argument, over objection, was error. Defendants are entitled to and must be awarded a new trial.

NEW TRIAL.