STATE OF NORTH CAROLINA v. KERRY JAMES WADE

No. COA08-1414

(Filed 21 July 2009)

**1. Evidence— testimony—inconsistencies between suppression hearing and trial—additional pertinent information**

The trial court did not abuse its discretion in a felonious possession of cocaine and possession of drug paraphernalia case by failing to consider trial testimony of two officers allegedly containing additional pertinent information not included in their tes-

STATE v. WADE.

[198 N.C. App. 257 (2009)]

timony at the suppression hearing when deciding defendant's renewed motion to suppress the evidence obtained during the search of his person during his detention by the investigating officers because: (1) a review of the record revealed there was no additional pertinent information discovered during the trial that necessitated a reopening of the record or a reconsideration of the trial court's initial decision to deny defendant's suppression motion; (2) a number of the alleged inconsistencies in testimony do not involve contradictions of the type claimed by defendant; (3) even if the record reflected the existence of the inconsistencies between the testimony of the two officers at the suppression hearing and at trial, these inconsistencies did not constitute additional pertinent information of the type contemplated under N.C.G.S. § 15A-975(c); (4) defendant's trial counsel cross-examined the investigating officers concerning the alleged inconsistencies; and (5) contrary to defendant's assertion, the record reflected that the trial court understood that one of its functions at the suppression hearing was to make any necessary credibility determinations.

2. **Search and Seizure— warrantless search—motion to suppress—person in need of immediate aid or need to protect or preserve life or prevent serious injury**

The trial court's decision to deny defendant's suppression motion in a felonious possession of cocaine and possession of drug paraphernalia case was not subject to reversal on appeal because: (1) warrantless searches are permissible when officers believe that persons in the premises to be searched are in need of immediate aid or where there is a need to protect or preserve life or prevent serious injury; and (2) although defendant contends the investigating officers exceeded the scope of the investigative activities that they were allowed to undertake in light of the "be on the lookout" message, the mere fact that investigating officers saw no indication that the pertinent individual had sustained personal harm or that he was under direct physical restraint at the time that he exited the vehicle simply did not suffice to render further investigative activities inappropriate given the concerns relayed to investigating officers that the individual might have been at risk of harm or consorting with individuals with illegal drug involvement.

STATE v. WADE

[198 N.C. App. 257 (2009)]

### 3. Search and Seizure— informing jury that officers had probable cause to search—harmless error

Although the trial court erred in a felonious possession of cocaine and possession of drug paraphernalia case by allowing the prosecutor to disclose the trial court's finding that investigating officers had probable cause to search defendant to the jury at trial, the error was not prejudicial because it cannot be concluded that there was a reasonable possibility that the jury would have reached a different result at trial had the prosecutor not made the challenged comment given the overwhelming evidence of defendant's guilt including the admission of the cocaine base and pipe seized at the time of the investigative stop.

Appeal by Defendant from judgment entered 3 June 2008 by Judge William C. Griffin, Jr. in Alamance County Superior Court. Heard in the Court of Appeals 6 May 2009.

*Attorney General Roy Cooper, by Special Deputy Attorney General Daniel S. Johnson, for State.*

*Kevin P. Bradley, for defendant.*

ERVIN, Judge.

On 15 September 2007, the Burlington Police Department issued a "be on the lookout" alert for the owner of a green Saturn bearing a specific license plate number and registered to Aaron Daniel Zachary, a twenty-six-year-old white male (Zachary). Zachary had been reported as missing by his parents, who did not know where he was and believed that he was in danger.

While investigating an unrelated incident on South Mebane Street, Officer Tom Meisenbach of the Burlington Police Department (Officer Meisenbach) observed a green Saturn bearing the license plate number specified in the missing person report drive by. As a result of the fact that Zachary's photograph had been distributed earlier that day, Officer Meisenbach knew that the missing person was a white male. At the hearing conducted for the purpose of addressing Defendant's suppression motion, Officer Meisenbach testified that, when he saw the green Saturn drive by:

I noticed it was being driven by a black male and there was a white male in the back passenger seat . . . [and] a white female in the front right passenger seat . . . . And I remember thinking it was

really odd because Mr. Zachary was a white male and it was his tag. . . . And I thought it was kind of odd that the vehicle was being driven by a black male, especially. And so I got on the radio and called for any officer in the area. . . . Corporal White answered up.

Officer Meisenbach acknowledged that he did not suspect illegal activity when he initially spotted the vehicle. Although Officer Meisenbach did not have any indication that Zachary was at risk, he stated that "it did cross my mind" that he might be in some sort of trouble.

Meanwhile, Corporal Billy White of the Burlington Police Department (Corporal White) pulled behind the green Saturn. Officer White noted that the "[vehicle] was in the place where [Zachary] was reported missing." Though Zachary did not appear to be subject to any sort of restraint, Officer White decided to detain the driver, who turned out to be the defendant, Kerry James Wade, and investigate further. At trial, Officer White testified that:

I observed Mr. Zachary in the back getting out.[1] Observed Mr. Wade getting out. I asked Mr. Wade for some identification. He asked me why. I told him that I was investigating a crime being involved—or reported for that car. I didn't tell him about Mr. Zachary at that minute.

As the driver exited the green Saturn, Corporal White testified that he saw the driver drop a tan rock-like substance. Corporal White believed the substance to be crack cocaine. When asked whether Defendant was free to leave prior to dropping the substance, Corporal White responded in the negative.

Upon Officer Meisenbach's arrival, Corporal White directed Defendant to the rear of the vehicle and instructed Officer Meisenbach to frisk Defendant for weapons and to detain him. At trial, Officer Meisenbach stated that:

I don't remember exactly what Corporal White instructed me initially, but I went ahead and asked for consent to search him for any drugs or weapons or anything like that. He denied it and said I had no reason to. And then a minute later, Corporal White came back around the front of—to the back of the car where I was and told me to go ahead and frisk Mr. Wade.

1. Zachary claimed to have been outside the Saturn by the time that the officers arrived.

At that time, I asked Mr. Wade to put his hands on the vehicle and I proceeded to do a pat-down on the exterior clothing, at which point Mr. Wade turned around and actually slapped my hands and became very verbally aggressive and stated I had no reason to frisk him.

After that, according to Officer Meisenbach's trial testimony:

I asked him to put his hands on the car again. At that time, Corporal White came back to the back of the car again. And I honestly don't recall exactly where Corporal White was standing initially. But he came back and told Mr. Wade to put his hands on the car because we needed to frisk him for weapons. I started to do it and, again, Mr. Wade turned around and, quite literally, slapped my hands. At that point, Corporal White and I told him he was being detained. And after a brief struggle, we placed him in handcuffs at the back of the vehicle.

Corporal White noted that he observed a physical altercation between Defendant and Officer Meisenbach, so he assisted Officer Meisenbach in handcuffing Defendant.

While Officer Meisenbach continued to pat Defendant down, Corporal White picked up the substance that had been dropped on the ground and placed it into his pocket. Corporal White reported submitting the substance retrieved from Defendant's pocket to Officer Meisenbach. Officer Meisenbach, on the other hand, testified:

A. Again, I don't remember the specific wording, but as [Officer White] approached, he came back and said, well, he's under arrest now. He dropped a crack rock over there.

Q. Right. He told you this stuff.

A. Yes.

Q. He didn't show you where the rock was.

A. No.

Q. He didn't show you the rock.

A. No.

Q. You don't know where the rock is.

A. No.

During the pat down, Officer Meisenbach seized a plastic bag containing what appeared to be cocaine and a glass smoking pipe from

Defendant's pants pocket. Sheila Bayler, a chemist employed by the State Bureau of Investigation, analyzed the substance retrieved from Defendant's pocket and testified that it contained cocaine base weighing 0.7 grams.

On 15 September 2007, a warrant charging Defendant with felonious possession of cocaine and possession of drug paraphernalia was issued. On 22 January 2008, the Alamance County grand jury indicted Defendant for felonious possession of cocaine and possession of drug paraphernalia. In addition, the grand jury returned a bill of indictment charging Defendant with having attained the status of an habitual felon.

Prior to trial, Defendant filed a motion to suppress the cocaine and glass smoking pipe seized from his person. In his suppression motion, Defendant asserted that the "search and seizure was not incident to an arrest or inventory. . . [and] was without probable cause or legal justification." After an evidentiary hearing held prior to the selection of a jury, the trial court denied Defendant's suppression motion. In its order denying Defendant's suppression motion, which was dictated into the record after the jury had begun its deliberations, the trial court found as fact that:

1. On September 15, 2008, before going on patrol, Officer Meisenbach of the Burlington Police Department received a "be on the lookout" for a green Saturn automobile which included a specific license plate number and a photograph of a person reported to be missing that was connected with this automobile.

2. While out of his patrol car investigating an unrelated matter at Garden Apartments on South Mebane Street, Officer Meisenbach saw a vehicle matching the description given to him before he went on his shift and also recognized one of the passengers from a photograph previously provided.

3. He radioed for assistance for some other officer to check the vehicle he had seen.

. . . .

4. Officer White responded to the call and pulled in behind the green Saturn as it parked in a parking lot. The Defendant Wade was the driver and a white female was in the front passenger seat, a white male in the rear passenger seat.

During an interaction with the driver, that is, the Defendant Wade, about the identification, Officer White saw the defendant

**STATE v. WADE**

[198 N.C. App. 257 (2009)]

drop what he knew to be a cocaine "crack rock." Put crack rock in quotes.

Next number. By the time Officer Meisenbach had arrived, he was asked by Officer White to pat down the Defendant Wade for weapons. During the pat down a plastic bag containing what appeared to be cocaine was found along with a glass smoking pipe.

Defendant—thereafter, Defendant Wade was arrested for possession.

Based upon these findings of fact, the trial court concluded as a matter of law that, "based upon the 'be on the lookout' the officers had authority to make a brief investigative stop of the vehicle described;" that, "as a consequence of the stop[,] Officer White personally observed the defendant in violation of the state law with regard to the possession of cocaine;" that, "[a]t that point[,] Officer White had authority to arrest the Defendant Wade based upon his personal observation;" and that "[n]one of the defendant's Constitutional rights with regard to search and seizure were violated by the brief investigatory stop that led to his arrest."

After the trial court denied Defendant's motion to suppress, the case came on for trial before a jury. As soon as the jury was allowed to begin its deliberations and immediately prior to the dictation of the trial court's findings of fact and conclusions of law concerning Defendant's motion to suppress, the following colloquy occurred between Defendant's trial counsel and the trial court:

MR. MARTIN: Judge, I would make a further motion at this time to adopt the trial testimony as part of the evidence provided in the motion to suppress in that the evidence of the second police report—supplemental police report of Officer Meisenbach had been provided to me in between the time of the motion and the trial and there was additional cross-examination, additional testimony which could go to the question in front of the Court. I would just ask that the Court adopt that as part of the evidence.

THE COURT: I don't think—its in the record. Whether I adopt it or not I don't think makes any difference. I—it does not affect my ruling—

MR. MARTIN: I understand.

At that point, the trial court dictated its findings of fact and conclusions of law addressing the issues raised by Defendant's suppression motion into the record.

On 3 June 2008, the jury convicted Defendant of felonious possession of cocaine and possession of drug paraphernalia. After finding that Defendant had a Prior Record Level of VI and after accepting Defendant's admission to having attained habitual felon status, the trial court sentenced Defendant to a minimum term of 168 months and a maximum term of 211 months imprisonment in the custody of the North Carolina Department of Correction. Defendant noted an appeal to this Court from the trial court's judgment.

## Renewed Motion to Suppress

**[1]** In his first argument, Defendant contends that the court erred by failing to consider the trial testimony in deciding his renewed motion to suppress the evidence obtained during the search of his person during his detention by the investigating officers.[2] In support of this contention, Defendant relies on N.C. Gen. Stat. § 15A-975(c), which provides that, "upon a showing by the defendant[] that additional pertinent facts have been discovered by the defendant which he could not have discovered with reasonable diligence before the determination of the motion, he may permit the defendant to renew the motion . . . ." After careful consideration of Defendant's contentions, we conclude that the trial court did not err.

According to established North Carolina law, a trial judge may allow a defendant to renew an unsuccessful pretrial suppression motion in the event that the defendant shows that he or she has discovered additional pertinent information that could not have been obtained through the exercise of due diligence by the time of the trial court's ruling on the defendant's pretrial suppression motion. *State v. Blackwood*, 60 N.C. App. 150, 152, 298 S.E.2d 196, 198 (1982); N.C. Gen. Stat. § 15A-975(c). A trial court's ruling on a request to renew a pretrial motion to suppress is subject to appellate review under an

2. According to the record, the motion that Defendant actually made at trial was that the trial court "adopt" the evidence received at trial as part of the evidentiary record on the basis of which Defendant's suppression motion would be decided. However, both Defendant and the State have addressed this issue on appeal as if it involved a request to renew Defendant's suppression motion pursuant to N.C. Gen. Stat. § 15A-975(c). As a result, we will examine the arguments advanced by Defendant in support of this assignment of error as if his "adoption" request was a request to renew his suppression motion as authorized by N.C. Gen. Stat. § 15A-975(c).

abuse of discretion standard. *State v. Marshall*, 94 N.C. App. 20, 32, 380 S.E.2d 360, 367 (1989). As a result, the issue before this Court is whether the trial court abused its discretion by concluding that the testimony of Corporal White and Officer Meisenbach at trial contained "additional pertinent information" not included in their testimony at the hearing held for the purpose of considering Defendant's pretrial suppression motion.

According to Defendant, the evidence received at trial "revealed significant new information calling into question both the Superior Court's finding of fact that Officer White saw [Defendant] drop a crack rock while interacting with [Defendant] regarding the identification of [Zachary] and the Superior Court's conclusion of law that none of [Defendant's] constitutional rights were violated by the investigatory stop." More particularly, Defendant contends that, during the pretrial hearing on his suppression motion, Officer White provided testimony that he immediately saw Defendant drop a "crack rock" as he approached the vehicle to inquire about the missing person. Defendant further contends that Corporal White contradicted this statement during his trial testimony by testifying that he was already aware that the male passenger was the missing person at the time that he approached the green Saturn and that Defendant discarded the crack rock after being informed that the officer was conducting a criminal investigation involving the car. Defendant further notes that, at the pretrial suppression hearing, Corporal White testified that he "asked Officer Meisenbach to frisk [Defendant] for any weapons because he was going to be detained." Officer Meisenbach, on the other hand, stated that he initially sought Defendant's consent to search and that Officer White subsequently "came back to the car . . . [and] at that time. . . informed [him] that [Defendant] was under arrest. . . [because] he had dropped a crack rock when he got out of the vehicle." Finally, despite Corporal White's testimony to the contrary, Defendant contends that the evidence received at trial indicates that Corporal White never showed the alleged dropped crack rock to Officer Meisenbach or presented the alleged crack rock for admission into evidence. As a result, Defendant contends that the testimony received at trial constituted additional pertinent information that the trial court should have considered in ruling upon the admissibility of the cocaine and the pipe seized from Defendant's person.

After carefully reviewing the record, we have not identified any additional pertinent information discovered during the trial that necessitated a reopening of the record or a reconsideration of the

**STATE v. WADE**

[198 N.C. App. 257 (2009)]

trial court's initial decision to deny Defendant's suppression motion. As we understand Defendant's argument, the additional pertinent information upon which Defendant relies consists of alleged inconsistencies between the testimony received at the pretrial suppression hearing and at trial concerning the point in time at which Defendant allegedly dropped a crack rock, the reason that Corporal White gave for detaining Defendant, and the extent to which Corporal White did or did not show the alleged dropped crack rock to Officer Meisenbach coupled with the State's failure to seek the admission of the alleged dropped crack rock into evidence. Although Defendant's argument is not entirely clear, it appears that he is contending that the alleged inconsistencies between the testimony offered by the investigating officers at the pretrial suppression hearing and at trial constituted "additional pertinent information" because they cast serious doubt upon the investigating officers' credibility.

After careful consideration of the record and briefs, we conclude that a number of the alleged inconsistencies do not involve contradictions of the type claimed by Defendant. For example, despite Defendant's claim that Corporal White testified at the suppression hearing that he did not know that the rear seat passenger was Zachary while testifying at trial that he knew Zachary was the passenger, the record does not actually indicate at any point that Corporal White definitely knew that Zachary was in the rear passenger seat at the time that he approached the car. Similarly, the record does not reflect that Corporal White ever testified during the suppression hearing that the events that he described at trial as having occurred at the time that he approached the green Saturn and began his interactions with Defendant did not occur. Moreover, Corporal White never testified at trial that he did not put the crack rock that Defendant allegedly dropped "into evidence;" instead, he simply stated at trial that he did not have the substance in the courtroom. Finally, Defendant has not pointed us to any portion of Corporal White's testimony at either the suppression hearing or at trial in which he claimed to have given the crack rock that Defendant allegedly dropped (as compared to the cocaine base later seized from Defendant's person) to Officer Meisenbach. As a result, it is not clear to us that the alleged inconsistencies upon which Defendant relies actually involved differences between the investigating officers' testimony at the suppression hearing and during the trial.

Even if the record does, in fact, reflect the existence of the inconsistencies between the testimony of Corporal White and Officer

Meisenbach at the suppression hearing and at trial as Defendant contends, we do not believe that these inconsistencies sufficed to constitute additional pertinent information of the type contemplated by N.C. Gen. Stat. § 15A-975(c). At best, the inconsistencies upon which Defendant relies were relatively minor and did not implicate the basic facts upon which the trial court relied in denying Defendant's pretrial motion to suppress, which were that the investigating officers initially stopped the green Saturn to investigate a missing person report, that Defendant was asked to get out of the vehicle as part of the investigating officers' response to the missing person report, that Defendant dropped what Corporal White believed to be a crack rock as he exited the green Saturn, and that a search incident to arrest following the discovery of the dropped crack rock resulted in the discovery of cocaine base and a pipe on Defendant's person. Although actual inconsistencies between the investigating officers' testimony at the pretrial suppression hearing and at trial relating to the central issues that the trial court was required to decide in ruling upon Defendant's pretrial suppression motion upon which Defendant relies in this Court might have constituted "additional pertinent information" under N.C. Gen. Stat. § 15A-975(c), none of the alleged inconsistencies upon which Defendant appears to rely are material in and of themselves. Furthermore, after hearing the investigating officers' trial testimony, the trial court specifically stated on the record that the additional testimony did not impact its previous decision to deny the motion. Finally, Defendant's trial counsel cross-examined the investigating officers concerning alleged inconsistencies between their testimony at the suppression hearing and information contained in a written police report. *State v. Bracey*, 303 N.C. 112, 124, 277 S.E.2d 390, 397 (1981) (stating that "cumulative or corroborative evidence" does not require the reopening of a suppression hearing pursuant to N.C. Gen. Stat. § 15A-975(c)); *Marshall*, 94 N.C. App. at 32, 380 S.E.2d at 367 , *disc. review denied* 325 N.C. 275, 384 S.E.2d 526 (1989) (stating that where "[a]ll of the information [in a supplemental report alleged to constitute material newly discovered evidence] was brought out through testimony of the officers at the pre-trial suppression hearing," there was no basis for reopening a suppression hearing pursuant to N.C. Gen. Stat. § 15A-975(c)). As a result, for all of these reasons, we are unable to say that the trial court abused its discretion by concluding that the alleged inconsistencies upon which Defendant relies did not constitute "additional pertinent information" of the type contemplated by N.C. Gen. Stat. § 15A-975(c).

**STATE v. WADE**

[198 N.C. App. 257 (2009)]

In addition, we are not persuaded by Defendant's assertion that the trial court "misunder[stood] the suppression determination to be a sufficiency of the evidence determination rather than a determination of credibility, weight of the evidence, and proof . . . ." On the contrary, the record clearly reflects that the trial court understood that one of its functions at the suppression hearing was to make any necessary credibility determinations. During a colloquy that occurred prior to the suppression hearing, the following exchange took place:

THE COURT:  Put them on [sic] stand and see what they say.

MR. MARTIN:  Yes, sir.

THE COURT:  And the motion alleges that there was no basis for the traffic stop; is that essentially what this is about?

MR. MARTIN:  Judge, yes, that there's no basis for the traffic stop and also that there was no basis for the personal search of my client. There are—we have inconsistent reports between the officers.

THE COURT:  Well, forget the reports. We're going to find out—

MR. MARTIN:  I understand.

THE COURT:  —we're going to find out under oath here what went on.

MR. MARTIN:  Yes, sir, I understand. But upon information and belief—

THE COURT:  You know, the trouble with all this discovery business is this. You can talk to a witness five times; you get five different stories, you know.

MR. MARTIN:  Yes, sir.

Although the trial court did, at one point, sustain the State's objection to cross-examination questions intended to show inconsistencies between the testimony of Corporal White and information contained in certain police reports by stating "I'm not a jury," that comment does not in any way tend to show anything more than the trial court's preference that Defendant's trial counsel "[m]ove on to something else" rather than a statement that the trial court did not believe that it had the responsibility of making a credibility determination as part of the process of deciding Defendant's suppression motion. Similarly, the trial court's statements that the "Officer's testified he saw it drop,"

that "I'm going to let you have at him in front of the jury," and that "there's sufficient evidence to warrant going forward with the case" cannot be fairly read as a disclaimer of any obligation on the part of the trial court to make needed credibility determinations. On the contrary, the trial court's statement is nothing more than an announcement that the trial court was satisfied that the evidence supported allowing the jury to hear the testimony of the investigating officers concerning their search of Defendant, which is an entirely different matter. As a result, Defendant's challenge to the trial court's refusal to reopen the suppression hearing cannot be sustained.

## Motion to Suppress

[2] Next, Defendant challenges the trial court's refusal to suppress the evidence seized from Defendant's person during the investigatory stop. After careful consideration, we conclude that the trial court's decision to deny Defendant's suppression motion is not subject to reversal on appeal.

"When reviewing [an appellate challenge to the denial of a] motion to suppress, the trial court's findings of fact are conclusive and binding on appeal if supported by competent evidence." *State v. Fields*, 195 N.C. App. 740, 742-43 673 S.E.2d 765, 767 (2009) (citing *State v. Edwards*, 185 N.C. App. 701, 702, 649 S.E.2d 646, 648, *disc. review denied*, 362 N.C. 89, 656 S.E.2d 281 (2007)). On the other hand, a trial court's conclusions of law in an order denying a motion to suppress are subject to *de novo* review. *Edwards*, 185 N.C. App. at 702, 649 S.E.2d at 648 (quoting *State v. Chadwick*, 149 N.C. App. 200, 202, 560 S.E.2d 207, 209 (2002)). As a result of the fact that Defendant has not challenged any of the trial court's findings of fact, we must decide the issues raised by Defendant's challenge to the trial court's order denying his motion to suppress on the basis of the facts found by the trial court.

In challenging the trial court's decision to deny his suppression motion, Defendant essentially argues that the investigating officers had unlawfully detained Defendant prior to the point at which Defendant allegedly dropped the crack rock and that the discovery of the cocaine base and the pipe were the fruits of this unlawful detention.[3] After careful consideration of Defendant's arguments on appeal, we disagree.

3. After a careful review of the record, it is not clear to us that the events surrounding the dropping of the crack rock occurred in precisely the order outlined in Defendant's brief. In addition, the exact order of the events that occurred immediately before and after Defendant dropped the crack rock is not delineated in the trial court's

STATE v. WADE

[198 N.C. App. 257 (2009)]

Warrantless searches are presumed to be unreasonable and therefore violative of the Fourth Amendment of the United States Constitution. *State v. Logner*, 148 N.C. App. 135, 139, 557 S.E.2d 191, 194 (2001). However, there are "a few specifically established and well-delineated exceptions," *Katz v. United States*, 389 U.S. 347, 357, 88 S. Ct. 507, 514, 19 L. Ed. 2d 576, 585 (1967). When, for example, officers believe that persons in the premises to be searched are in need of immediate aid or where there is a need to protect or preserve life or prevent serious injury, a warrantless search of the location in question does not violate the Fourth Amendment. *State v. Phillips*, 151 N.C. App. 185, 192, 565 S.E.2d 697, 702 (2002) (citations omitted).

According to the trial court's findings, the initial stop of the green Saturn which Defendant was driving stemmed from the "be on the lookout" message provided to officers of the Burlington Police Department. Having received such a missing person report regarding Zachary, it was perfectly appropriate for Officer Meisenbach and Officer White to temporarily prevent the green Saturn from being driven off, detain the occupants, and make sure that Zachary was not in any danger of harm. Although Defendant does not appear to dispute the appropriateness of the officers' initial decision to prevent the green Saturn from being driven off, he contends that the fact that Zachary did not appear, at the time that he exited the vehicle, to have been battered or restrained against his will eliminated the necessity for further investigative activities and that all such activities should have ceased as soon as these facts became apparent. Thus, Defendant's ultimate complaint is that the investigating officers exceeded the scope of the investigative activities that they were allowed to undertake in light of the "be on the lookout" message.

According to the "be on the lookout" report, Zachary's parents "believed him to be at risk," "had no idea where he was," and were concerned that "he was possibly frequenting drug areas within the city." At the time that Officer Meisenbach saw Zachary in the green Saturn, he was riding in the back seat of his own vehicle, which was being driven by Defendant. The mere fact that the investigating officers saw no indication that Zachary had sustained personal harm or that he was under direct physical restraint at the time that he exited the vehicle simply did not suffice to render further investigative activities inappropriate, given the concerns relayed to investigating offi-

order denying Defendant's suppression motion. However, we have chosen to address the argument advanced in Defendant's brief on the basis of an assumption that the facts are as the Defendant has outlined them in his arguments to this Court.

STATE v. WADE

[198 N.C. App. 257 (2009)]

cers that Zachary might have been at risk of harm or consorting with individuals with illegal drug involvement. For example, the investigating officers were entitled to make further inquiry as to whether Zachary was subject to some form of restraint other than direct physical confinement or whether he was in danger of harm as the result of drug consumption by himself or someone else, such as the driver of his automobile. For that reason, the actions of the investigating officers in continuing to look into the situation in which Zachary found himself after Zachary exited the vehicle did not exceed constitutional limitations. We therefore overrule this assignment of error.

### Prosecutorial Question Concerning Trial Court's Finding of Probable Cause

[3] Finally, Defendant argues that the trial court erred by allowing the prosecutor to disclose the trial court's finding that investigating officers had probable cause to search Defendant to the jury at trial. During redirect examination, the prosecutor posed the following question to Officer White in the presence of the jury:

Q. Okay. Now, with respect to the probable cause Mr. Martin's asked you about, are you aware that at a previous time in a court of law, a superior court judge had found probable cause?

MR. MARTIN: Objection. Objection. Move to strike. Ask for mistrial.

THE COURT: What was your question?

MR. MARTIN: Judge, I'd like this to be made outside the hearing of the jury.

THE COURT: Step up here, please.

(There was a Bench conference with Mr. Boone and Mr. Martin in attendance.)

THE COURT: Overruled. Motion denied.

According to Defendant, the trial court's failure to sustain his objection to this question impermissibly allowed the State to place the trial court's opinion that there was probable cause for the search of Defendant and the seizure of the cocaine base and pipe that underlay the State's charges against Defendant before the jury.

As a general proposition, "the trial judge's legal determination or opinion on the evidence made during a hearing properly held outside

the jury's presence" should not be disclosed to the jury. *State v. Allen,* 353 N.C. 504, 509, 546 S.E.2d 372, 375 (2001), *disc. review denied and appeal dismissed* 360 N.C. 66, 621 S.E.2d 878 (2005). As a result, "[p]arties in a trial must take special care against expressing or revealing to the jury legal rulings which have been made by the trial court, as such disclosures will have the potential for special influence with the jury." *Id.* at 509-10, 546 S.E.2d at 375. The Supreme Court reached this conclusion on the grounds that prosecutorial comments disclosing a trial judge's legal ruling, even though that ruling was not directly stated by the trial court, had "virtually the same effect" as an expression of the trial court's opinion as to the "credibility of evidence that was before the jury." *Id.* at 511, 546 S.E.2d at 375-76. Such conduct indirectly results in a violation of N.C. Gen. Stat. § 15A-1222, which provides that "[t]he judge may not express during any stage of the trial, any opinion in the presence of the jury on any question of fact to be decided by the jury."

An examination of the relevant portion of the record establishes that the prosecutor's question impermissibly disclosed the trial court's finding that the investigating officers had probable cause to search Defendant to the jury. Although the prosecutor's assertion that the investigating officers had probable cause to search Defendant is not as direct an affirmation of the credibility of the evidence proffered by the State as the comment at issue in *Allen,* 353 N.C. at 508, 546 S.E.2d at 374 (" 'And you heard her words through Officer Barros, because the Court let you hear it, because the Court found that they were trustworthy and reliable.' "), we agree with Defendant that the prosecutor's assertion that a finding that the investigating officers had probable cause to search Defendant is difficult to distinguish from a favorable comment on the credibility of the State's witnesses given the facts of this case. As a result, the trial court erred by overruling Defendant's objection to and denying Defendant's motion to strike the prosecutor's comment.

Even so, the mere asking of a question, without more, does not ordinarily result in sufficient prejudice to a defendant to necessitate a new trial. *State v. Campbell,* 296 N.C. 394, 399, 250 S.E.2d 228, 231 (1979) (citing *State v. Barrow,* 276 N.C. 381, 172 S.E.2d 512 (1970)). In order to demonstrate that a trial court's error was prejudicial, a defendant must show that there is a reasonable possibility that a different result would have been reached in the absence of the trial court's error. N.C. Gen. Stat. § 15A-1443(a).

**STATE v. WADE**

[198 N.C. App. 257 (2009)]

After careful consideration of the record, we cannot conclude that there is a reasonable possibility that the jury would have reached a different result at trial had the prosecutor not made the challenged comment. Unlike the situation in *Allen*, the comment was embodied in a question that was never answered. Moreover, unlike the situation in *Allen*, the challenged comment did not involve a direct assertion that the State's evidence was "trustworthy and reliable." In other words, despite the fact that Defendant clearly challenged the credibility of the account of the events that occurred at the time of the investigatory stop which led to Defendant's arrest, there is a material difference between the impact on the jury of evidence that a trial judge believed that the State's evidence was "trustworthy and reliable" and evidence that the actions of the investigating officers were supported by "probable cause." Finally, although Defendant clearly claims that the investigating officers' claim that Defendant dropped a crack rock during the investigatory stop was a complete fabrication, it does not appear to us that Defendant is contending that the officers' contention that cocaine base and drug paraphernalia were found on his person was a fabrication as well. Given our determination that the trial court did not err in admitting the cocaine base and pipe seized at the time of the investigative stop, the evidence of Defendant's guilt is simply overwhelming. As a result, for all of these reasons, we conclude that there is no reasonable possibility that the outcome at trial would have been different had the trial court sustained Defendant's objection and allowed Defendant's motion to strike the trial court's comment.

After careful consideration of the record and briefs, we conclude that Defendant received a fair trial, free from prejudicial error. Thus, we further conclude that Defendant is not entitled to any relief on appeal.

NO PREJUDICIAL ERROR.

Judges ELMORE and STROUD concur.